[Crim. No. 206.   In Bank.—August 3, 1897.]

117 624
129 262

THE PEOPLE, RESPONDENT, *v.* WONG CHUEY, AP-
PELLANT.

CRIMINAL LAW — HOMICIDE—EVIDENCE — IMPEACHMENT OF WITNESSES—
OBSTRUCTION OF VIEW BY TRAIN—QUESTION AS TO TIME FOR TRAIN—
AMBIGUOUS ANSWER—WAIVER OF OBJECTION.—Upon the trial of a
defendant accused of murder, the prosecution may impeach the testi-
mony of witnesses for the defendant as to the facts and circumstances
of the homicide, by proof that at the time of the homicide, a passing
freight train obscured their view of the killing; and it is proper to ask
the train dispatcher as to the time when the train was due at the station
where the homicide occurred, as being some evidence tending to show
that it arrived there upon schedule time upon that occasion, and where
an ambiguous answer was given, stating the time when the train arrived,
objection to the answer is waived by failure to move to strike it out as
irresponsive, and the evidence is admissible, whether the answer be con-
strued as intended to state the time when the train was due, or the time
when it actually arrived on that occasion, there being no test, on cross-
examination, as to the knowledge of the witness.

ID.—CROSS-EXAMINATION—BIAS OF WITNESS — ATTEMPT AT BRIBERY —
IMPEACHING EVIDENCE.—A witness for the defendant may be asked on
cross-examination if he had not attempted to bribe certain other wit-
nesses to give false testimony in the interest of the defendant, for the
purpose of showing his bias and partisanship, and upon his answer to
the contrary he may be impeached, in rebuttal, by witnesses proving
such attempted bribery.

ID.—DYING DECLARATIONS—RES GESTÆ—STATEMENT OF CODEFENDANT—
HEARSAY—PRESENCE OF DEFENDANT.—A dying declaration, in contem-
plation of law, refers only to the facts and circumstances surrounding
the homicide, and constituting the *res gestæ;* and a statement embodied
with the dying declarations of the deceased as to a remark made by a
codefendant in presence of the defendant at the time when they were
brought before him some hours after the shooting, is hearsay, and inad-
missible; and is not rendered admissible by the fact of the presence of
the defendant when the remark was stated by the deceased; it being
no part of the dying declaration, and not evidence under oath.

ID.—WITHDRAWAL OF OBJECTIONS—SUBSEQUENT REJECTION OF HEARSAY
—FAILURE TO OBJECT.—Where counsel for defendant withdrew objec-
tions to the hearsay evidence embodied in the dying declarations, pro-
posing to explain the statement made by the deceased, and upon failure
to make such explanation, the court subsequently rejected the hearsay
evidence, such ruling was proper, and where no objection was taken
thereto, there is no tangible ground of complaint on appeal of the de-
fendant; nor can he insist that the withdrawal of his objections entitled
him to place incompetent evidence before the jury.

ID.—EXPERT EVIDENCE — OPINION OF SURGEON — GUNSHOT WOUND —
CALIBER OF BULLET.—The surgeon who attended the deceased prior to
his death and who examined the gunshot wound which caused the

death, and who had had experience in examining gunshot wounds and the respective size of bullets making them, may testify to his opinion as to the caliber of the bullet which caused the wound of the deceased.

ID.—LIMITS OF CROSS-EXAMINATION — WITNESS FOR PROSECUTION — RES GESTÆ.—It is not error for the court to limit the cross-examination of a witness for the prosecution to matters testified to by him in chief; and if other matters asked about formed part of the *res gestæ,* they may be shown as part of defendant's case.

ID.—ALLEGED MISCONDUCT OF JUDGE AND COUNSEL FOR PEOPLE — INSUF-FICIENT SHOWING.—Where the alleged misconduct of the judge and counsel for the people consisted in various statements made in pres-ence of the jury, and in the asking of improper questions, but there is no extreme case, and no willful error, or display of anger, working injustice against the defendant, appears, a new trial will not be granted for the alleged misconduct.

ID.—ADMISSION OF DYING DECLARATIONS IN REBUTTAL—FAILURE TO OB-JECT—CASE IN CHIEF—REVIEW UPON APPEAL.—Where the dying dec-larations of the deceased were admitted in evidence in rebuttal, with-out any objection interposed thereto by the defendant, error cannot properly be claimed by the defendant upon appeal for failure of the prosecution to offer such evidence in their case in chief.

ID.—DECLARATION OF DEFENDANT AS TO PISTOL UPON TABLE — IMPEACH-MENT—COMPARATIVE HEIGHTS—SUBSEQUENT ADMISSION OF REJECTED EVIDENCE—CURE OF ERROR—PRIOR IMPEACHMENT OF IMPEACHING WITNESS—MOTION TO STRIKE OUT.—Where witnesses for the prosecu-tion testified that defendant, while in custody, recognized a pistol lying on a table, and stated in English that he thought it was his pistol, evi-dence is admissible to impeach such witnesses by showing the comparative heights of the table and of the defendant, and that he could not see the pistol on the table, but error in the rejection of such evidence is cured by its subsequent admission; and the fact that a witness for the defend-ant who testified by way of impeachment that the defendant could not speak English was impeached by the prosecution prior to the admission of the rejected evidence, cannot prevent the cure of the error in rejecting it, and it is not error to refuse to strike out the evidence of defendant's witness, and the impeachment thereof by the prosecution, when the rejected evidence was admitted.

ID.—RULE AS TO CURE OF ERROR — DISTINCTION BETWEEN CURE OF AD-MITTED AND OF REJECTED EVIDENCE.—The rule as to the cure of error in a criminal case, where evidence is admitted and subsequently rejected, is different from that which applies where evidence is rejected and sub-sequently admitted; in the former case, injury may be done by allowing the incompetent evidence to go to the jury, which cannot be adequately cured by a subsequent ruling; but the reason of the rule is not the same in the latter case, and the error in rejecting the evidence is cured by its subsequent admission.

APPEAL from a judgment of the Superior Court of Los Angeles County and from an order denying a new trial.  B. N. SMITH, Judge.

CXVII. CAL.—40

The facts are stated in the opinion of the court.

*Henry T Gage, Marble & Phibbs,* and *W. I. Foley,* for Appellant.

*W. F. Fitzgerald, Attorney General,* and *Henry E. Carter, Deputy Attorney General,* for Respondent.

GAROUTTE, J.—The defendant has been convicted of murder of the second degree, and appeals to this court. He presents for our consideration many alleged errors of law occurring during the progress of the trial.. We will address ourselves to those which we deem of sufficient importance to demand special notice.

1. Certain witnesses for defendant gave evidence as to the facts and circumstances of the homicide. The prosecution sought to impeach their evidence by showing that a passing freight, train obscured their view of the killing. To establish the fact that a freight train was passing the point where the murder occurred at that particular time, the train dispatcher of the company was placed upon the stand. He testified that this particular train left the Arcade depot at 6:35 P. M., going toward the river station. He was then asked what time it would be due there. An objection to this question was overruled, and the witness answered, "The train arrived at the River station at 6:50." This answer is somewhat confusing when the question addressed to the witness is considered, and from one standpoint may be said to be nonresponsive to the interrogatory. But, from any view, the court committed no error. The question in itself was clearly proper. The fact that the train was due at the River station at 6:50 was some evidence, however slight, that it arrived there upon schedule time this particular afternoon, and, weighing the answer from that standpoint, defendant's objection went to the weight of the evidence, rather than to its admissibility. As suggested, the answer was, from one view, nonresponsive; but no motion to strike it out was made upon that ground, and such objection is thereby waived.

Again, this answer bore either one of two constructions: if it be considered to be a statement that freight trains, such as this particular one, was due at River station at 6:50, then, as already suggested, the evidence was clearly proper.   If the only remaining construction be placed upon the answer of the witness, then his answer amounted to a direct and positive statement that this particular train arrived at River station, upon this particular day, at 6:50 P. M., and, being a direct and positive statement as to the fact, it was clearly proper and material evidence.   If counsel for defendant had shown upon cross-examination of the witness that he had no knowledge as to the time of the arrival of this train at River station, then, upon motion, he would have been entitled to have this evidence stricken from the record; that is, he would have been so entitled, upon the second construction we have given his anwer to the question. *People* v. *Mitchell*, 94 Cal. 550, does not support appellant's contention upon the proposition here considered.

2. Wong Chee, as defendant's witness, testified that he had known defendant for ten years, and never knew him to speak English in his presence.   Upon cross-examination, he was asked, in effect, if he had not met one Courtney and one Morrison, in his rooms, prior to the pending trial, and there attempted to bribe Courtney to give false testimony in the interest of the defendant. Under objection, the witness answered in the negative. There was no error in allowing the question.   For the purpose of fairly and fully weighing the evidence of any witness, the jury are entitled to know his bias and feeling in the case, if such there be.   (*People* v. *Lee Ah Chuck*, 66 Cal. 667; *People* v. *Thompson*, 92 Cal. 506.) If the witness was such an active partisan of the defendant as to be engaged in suborning witnesses in his behalf, that fact was most material in weighing his testimony.   In rebuttal, the prosecution contradicted the witness Chee by placing Courtney upon the stand, who testified to the attempted bribery.   This evidence was given under objection, but we see no valid objection to

it. The case of *People* v. *Dixon*, 94 Cal. 255, and *People* v. *Choy Ah Sing*, 84 Cal. 276, in no way support defendant's contention. The evidence proposed to be shown in those cases in no way attacked the credibility of the witness giving it. Here the evidence is a direct attack upon his credibility. The evidence was not offered as tending to show the guilt of the defendant, or as in any way smirching his character by intimating that he was a party to the proposed bribery. But it was offered for the purpose of shedding light upon the evidence of the witness himself. In the case of *Lewis* v. *Steiger*, 68 Cal. 200, it is said: "It is not to be doubted that where a witness for the defendant has attempted to dissuade one of the plaintiff's witnesses from attending the trial, and denies on his cross-examination that he has done so, the plaintiff is entitled to give evidence to contradict him in this respect. . . . . So in the case under consideration, it was competent for the defendant to show that the witness Miller had endeavored to corrupt the witness Webster, and induce him to swear false in this particular suit, to the prejudice of the defendant." (See, also, *People* v. *Murray*, 85 Cal. 350.)

3. A short time after the murder the defendant and one Wong Wing, who was charged as a codefendant, were brought before the deceased, who was then *in extremis*, and at that time the deceased made a written dying declaration, which was subsequently offered in evidence. In this declaration is found the following question by the deputy district attorney, and the answer of the deceased: "Q. What did Wong Wing say to you when he came in, in Chinese? A. 'You better not tell him.' (Referring to the deputy district attorney.)" This interrogatory referred to a statement made by Wong Wing in the presence of the defendant, at the time the defendant and Wong Wing were brought before him, some hours subsequent to the shooting. This statement of Wong Wing's, whatever it may have been, was no part of a dying declaration. A dying declaration, in contemplation of law, refers to the facts and circumstances

immediately surrounding the homicide—the *res gestæ.*
(*People* v. *Fong Ah Sing,* 64 Cal. 253.)

Neither was the foregoing evidence admissible as a
statement made in the presence of the defendant; it
being no part of the dying declaration, as far as the de-
ceased was concerned, it was the purest hearsay. It was
in no sense evidence given under oath, and was clearly
inadmissible.   But defendant's counsel withdrew his
objections to the question, stating that he desired to
explain the evidence at the proper time, and in answer
to this statement the judge stated that he had that right.
The objections being withdrawn, the record presents no
tangible ground upon which to base a valid complaint
in this court.   Neither do we find any objection to the
course subsequently adopted by the court bearing upon
this matter.   Conceding that it would have been proper
for defendant's counsel in due course to have placed
Wong Wing upon the stand, in order that he might
have the opportunity to explain what was meant by his
statement to the deceased, still this course was not
adopted, and the evidence attempted to be produced
upon the point was properly rejected.   Of course it can-
not be claimed for a moment that under the statement
of the court, when counsel withdrew his objection to the
former question, the defendant was entitled to place mat-
ters before the jury not legal and competent evidence.

4. The surgeon who attended the deceased prior to
his death testified that he examined the gunshot wound
which caused the death, and that he had examined gun-
shot wounds in the past, and taken bullets therefrom,
and knew the size of the bullets making these various
wounds.   Under objection he then testified that in his
opinion the wound upon deceased was inflicted by a
forty-one or forty-four caliber bullet.   There is no sub-
stantial objection to this evidence.   The witness was
sufficiently versed in the subject of gunshot wounds and
the respective size of bullets to give evidence of the
character here adduced.   Neither did the court commit
error in limiting the cross-examination of the witness

McKenzie. He was not asked in his examination in chief as to anything that occurred between the defendant and deceased while deceased was lying upon the street. Hence, any cross-examination by defendant as to such matters was properly denied. If those facts and circumstances formed part of the *res gestæ*, as counsel now contend, then it was in their power to show them when defendant's case was being placed before the jury.

5. It is strenuously insisted that during the course of the trial both counsel for the people and the trial judge were guilty of such misconduct that a second trial of defendant should be had. This alleged misconduct consisted in various statements made by counsel and judge in the presence of the jury; and also consisted in the asking of improper questions of witnesses by counsel for the people. We are not prepared to order a new trial upon the grounds urged, and again indorse the views of the court as expressed upon this subject in *People* v. *Ward*, 105 Cal. 340, and *People* v. *Mayes*, 113 Cal. 618.

6. Error is claimed in this: that the prosecution failed in their case in chief to offer in evidence the dying declaration of deceased. In view of the fact that such dying declaration was offered by the prosecution in rebuttal, and also offered without objection, the merit of appellant's contention in this regard, if the contention ever possessed merit, has been dissipated.

7. Witnesses testified in behalf of the prosecution that the defendant, while in custody, recognized a certain pistol lying upon a table, and thereupon stated in English that he thought that it was his pistol. Defendant proposed to impeach these witnesses by showing the comparative height of the table and the height of the defendant, as thereby establishing the fact that it was not possible for the defendant to see the pistol lying upon the table. This evidence, which was clearly admissible for the purpose proposed, was rejected under objection. Thereupon defendant's counsel, for the same purpose, attempted to show by the witness Chee that

defendant could not speak the English language. This evidence was admitted without objection, and thereupon, in rebuttal, the prosecution offered evidence tending to impeach the witness Chee. After all these things had occurred the court set aside its ruling as to the evidence pertaining to the relative heights of the table and the defendant, stating to defendant's counsel that the ruling was erroneous, and that the evidence so rejected could now be introduced if counsel so desired. Counsel claim that defendant suffered such injury by the course previously adopted by the court that his only remedy was to be placed in the position he originally occupied prior to the introduction of the evidence of the witness Chee. Counsel further claim that this could only be done by striking out the evidence of the witness Chee and the evidence subsequently offered tending to impeach him. The court refused to grant the motion to strike out. There are cases where an erroneous ruling of the court in admitting evidence cannot be cured by a subsequent reversal by the court of its own action. In those cases the incompetent matters have gone to the jury, and the injury is beyond repair. Instructions of the judge to disregard such evidence are in such cases no adequate remedy for the wrong done; but no case now presents itself to our minds where error has been successfully predicated upon a state of facts similar to these here presented. The reason of the rule certainly is not the same where improper evidence is admitted and subsequently stricken from the record, and a case where proper evidence is rejected and subsequently allowed to go into the record. Upon principle the distinction between the two cases is plainly marked.

Counsel for the defendant claims that if the court had allowed his impeaching evidence as to the comparative heights of the table and the defendant to have gone before the jury in the first instance, deeming the impeachment complete, he would not have placed the witness Chee upon the stand at all; and, therefore, the defendant would not have been in the unhappy position

of standing sponsor for a false witness. Upon similar lines defendant's counsel could contend, in every case where an erroneous ruling in rejecting evidence was subsequently corrected, that the error was placed absolutely beyond any correction by the trial court. Yet this court has often held these errors cured by the practice of the course here adopted by the trial court. Again, the evidence of Chee that the defendant could not speak English was very important. It was directly in point as contradicting in a most substantial manner the evidence of the other side. It served the purpose of impeachment as fully and as completely as the rejected evidence would have done if originally admitted. With a due regard to the duty owing by counsel to his client, coupled with the zeal with which that client was defended, we believe defendant's counsel neither could nor should show that Chee's evidence would not have been offered if the other impeaching evidence had been admitted. Especially may this be said in view of the further fact that the evidence as to the respective heights of the table and the defendant was finally offered on the part of the defendant under the last ruling of the court; and those heights were disclosed to be three feet ten inches, and four feet nine and a quarter inches, respectively. Able and experienced counsel, such as were retained by defendant, could hardly have been satisfied with the sufficiency of such impeaching evidence, when substantial evidence of impeachment of a different character was at hand.

8. The court has examined with care the remaining assignments of error disclosed by the record and noticed in appellant's briefs, and we find none of them possessing such merit as to demand a reversal of the judgment and a new trial of the cause.

For the foregoing reasons the judgment and order are affirmed.

VAN FLEET, J., HARRISON, J., McFARLAND, J., and HENSHAW, J., concurred.

Rehearing denied.