PEOPLE, PLAINTIFF AND APPELLEE, *v.* RAMÍREZ DE ARELLANO, DEFENDANT AND APPELLANT.

APPEAL from the District Court of San Juan, Section 2, in a Prosecution for Bribery.

No. 1075.—Decided May 21, 1917.

BRIBERY—INFORMATION—VAGUENESS OR IMPERFECTION—DEMURRER—BILL OF PAR-TICULARS.—If an information is fairly susceptible of being interpreted as charging a public offense, any vagueness or imperfection of statement is to be considered as waived unless a clarification of the same be sought before trial by demurrer or by timely application for a bill of particulars.

ID.—ID.—BOARD OF EXAMINERS IN PHARMACY—PUBLIC BOARD.—The board of examiners of candidates for licenses as pharmacists is a public board, there-fore it is included in the word ''boards'' used in section 111 of the Penal Code.

ID.—ID.—SOLICITATION OF BRIBE—ACCEPTANCE OF BRIBE—GENERAL VERDICT.—In an information for bribery containing two counts, the first based entirely on the theory of solicitation and the second on the theory of the acceptance of a bribe, each of them susceptible of being considered a different form of stating a single offense under section 111 of the Penal Code, a general verdict is to be sustained if one count is good.

ID.—JURISDICTION.—When a person charged with soliciting a bribe receives part of the money in one district and part in another, he may be prosecuted in either district, according to section 8 of the Code of Criminal Procedure.

ID.—EVIDENCE—CREDIBILITY—FRIENDSHIP.—No court, in its discretion, should permit the mere matter of friendship to be unduly stressed in evidence to attack the credibility of a witness.

ID.—ID.—EXPERT TESTIMONY.—The best way of impugning the correctness of expert testimony is by the introduction of other expert testimony.

ID.—ID.—CROSS-EXAMINATION.—A party who on cross-examination interrogates an adverse witness as to interest, bias, prejudice, or ill-feeling is not bound

by his denial but may contradict him by other evidence, the matter not being collateral in its nature.

ID.—ID.—ID.—CREDIBILITY—IMPEACHMENT.—As bearing upon credibility, it may be shown and considered whether the relations of a witness with or his relations toward a party are friendly or the reverse; but a witness cannot be interrogated, under pretense of impeachment or preparation therefor, as to matters not relevant to his credit and which the cross-examining party has no right to bring out for other purposes; nor is it proper to bring out matters which, even if true, would not have any legitimate tendency to lessen the credibility of the witness.

ID.—ID.—HEARSAY EVIDENCE—PUBLIC RUMOR.—The rule of law, with certain exceptions, rejects hearsay evidence, although logical (sec. 19 of the Law of Evidence), and public rumor is one of the most insidious forms of hearsay evidence.

ID.—ID.—PUBLIC RUMOR—CONFRONTATION WITH WITNESSES—IMPEACHMENT OF WITNESS.—In this case it was charged and the proof tended to show that the examination questions, with their proper answers, were furnished to the candidate by the defendant. The latter introduced expert evidence to show that he, being a man of high intelligence, of great professional capacity and extensive technical knowledge, could not have furnished answers which the said experts characterized sometimes as badly mistaken, sometimes as incomplete. While the expert was testifying the prosecution offered in evidence a letter written by the witness to the defendant, advising him of a public rumor that certain proceedings before the board of examiners in pharmacy were being conducted irregularly. The object of introducing the letter in evidence was to show that a strong personal friendship existed between the witness and the defendant and to attack thus the veracity of the witness, but the letter was not admitted by the court. Subsequently, while the defendant was testifying the letter was admitted. *Held:* That, technically, the letter ought only to have been admitted while its writer was testifying and when he could have an opportunity to explain it, in accordance with sections 156 and 159 of the Law of Evidence; that said letter was not admissible for the purpose of contradicting or impugning the testimony of the expert witness, for there were other ways of proving the freindship between the defendant and the witness, and that the admission of the letter was prejudicial to the defendant because it contained a public rumor by which he was partially tried, not having been confronted in this regard with the witnesses against him as required by section 11 of the Code of Criminal Procedure, but with a public rumor brought before the jury under the guise of contradicting a witness.

ID.—INSTRUCTIONS TO JURY—EXCEPTION—WAIVER—ERROR.—When at the conclusion of the charge of the court the defendant asks for additional instructions, but notes no exception to the instruction already given, this is considered to be a waiver of error and the court will not consider an error in such a case unless satisfied that it is a fundamental one.

ID.—ID.—REASONABLE DOUBT—PRESUMPTION OF INNOCENCE.—In instructing the jury upon the nature of a reasonable doubt it is advisable for the court to define that term with all clearness, and even if not requested the court, in the interest of justice, should always instruct also on the presumption of innocence.

ID.—ID.—POINTS OF LAW—QUESTIONS OF FACT.—The Act of March 9, 1911, amending paragraph 8 of section 233 of the Code of Criminal Procedure, does not impose upon the court the duty to express its opinion with regard to all the legal points raised during the trial, or to give a resumé of all the facts, and the court should follow only the provisions of said section.

ID.—PAYMENT BY CHECK—PAYMENT IN CASH.—The fact that a check is given to a third person for an illegal purpose cannot affect the question of whether, in point of fact, a defendant had received a thing of value as a bribe, especially after the check was cashed, for it is no more illegal than would be a similar delivery of the cash.

ID.—INFORMATION—BOARD OF PHARMACY—DE FACTO OFFICIAL.—In an information for bribery against a member of the Board of Pharmacy it is surplusage to allege that the defendant is a "lawfully appointed" member of the board, for the information would be good if he were shown to be a de facto member.

ID.—EVIDENCE—PRESUMPTION OF INNOCENCE.—Until a person is convicted there is a presumption of innocence in his favor, and the fact of a prosecution against him does not tend to impeach him; therefore it was error to allow a witness to be asked whether a prosecution had not been begun against him.

ID.—ID.—OPINIONS OF SUPREME COURT.—Considerations or comments of the Supreme Court in its opinions should not be presented before a jury or used as evidence in a new trial.

The facts are stated in the opinion.

*Mr. J. Henri Brown* for the appellant.

*Messrs. Earle T. Fiddler,* Assistant Attorney General, *Salvador Mestre, Fiscal* of the Supreme Court, and *Luis Campillo,* District *Fiscal,* for the appellee.

MR. JUSTICE WOLF delivered the opinion of the court.

In this criminal appeal the information was in two counts as follows:

"*First.*—Between the months of September, 1914, and January, 1915, and in the judicial district of San Juan, Porto Rico, the said Clemente Ramírez de Arellano, being a member of the Board of Pharmacy of Porto Rico and as such a member of the Board of Examiners of applicants for licenses as pharmacists, unlawfully, wilfully, corruptly and criminally solicited a bribe of $300 from Rodolfo Bernal, an applicant who was about to be examined by the said board, with the understanding, or agreement, that in consideration of the said sum he would deliver to said Rodolfo Bernal the answers to the questions in each and all of the courses fixed by law for such examinations and to be included in the examinations. held or to be held in San Juan in the month of January, 1915,

which the latter was obliged to pass in order to obtain the diploma and license for practicing the profession of pharmacy in Porto Rico, the said answers being delivered to him with the understanding that he should copy them and return them together with the copies and it being agreed that in consideration of the $300 asked of Rodolfo Bernal the examinations thus copied and falsified by him should be rated good by Ramírez by giving him a percentage sufficient to pass the same and that the diploma and license for the practice of the profession of pharmacy in Porto Rico would be issued to him unlawfully, it being then a question pending before the Board of Examiners for its decision.

"*Second.*—Between the months of September, 1914, and February, 1916, and in the judicial district of San Juan, Porto Rico, the said Clemente Ramírez de Arellano, being a lawfully appointed member of the Board of Pharmacy and as such a member of the Board of Examiners of applicants for licenses as pharmacists, unlawfully, wilfully, corruptly and criminally agreed to accept and did accept a bribe of $300 from Rodolfo Bernal, an applicant who was to be examined by the said board, with the understanding or agreement that in consideration of the said sum he would deliver to said Bernal the answers to the questions in each 'and all of the courses fixed by law for such examinations and to be included in the examinations held or to be held in San Juan in the month of January, 1915, which the latter was obliged to pass in order to obtain the diploma and license for practicing the profession of pharmacy, the said answers being delivered to him with the understanding that he should copy them and return them together with the copies, and it being agreed that in consideration of the $300 received from Bernal the examinations thus copied and falsified by him should be rated good by Ramírez, who would influence the other members of the examining board to do likewise, by giving him a percentage sufficient to pass the same, and that the diploma and license for the practice of the profession of pharmacy in Porto Rico would be issued to him unlawfully, it being then a question pending before the board of examiners for its decision.

"This act is contrary to the statute in such case made and provided and against the peace and dignity of The People of Porto Rico.     (Signed) Luis Campillo, District Attorney.''

The statement of the case says that a demurrer was filed in the court below, but it was not brought up in the record. The said record shows that a plea of not guilty was filed on

the day of the arraignment. There is no indication in the record that the defendant in the court below obtained leave thereafter to file a demurrer, or that any demurrer was presented until the day of the trial. In the case of the *People* v. *París, ante,* p. 103, we decided that a demurrer, as such, interposed on the day of the trial comes too late. On the day of the trial any defect in the information that at common law might have been cured by verdict is waived. If the information is fairly susceptible of being interpreted as charging a public offense, any vagueness or imperfection of statement is to be considered as waived. *People* v. *Matus-zewski,* 138 Cal. 533; *Rex* v. *Perrott,* 8 English Ruling Cases, 116; *Heymann* v. *Rex,* 8 English Ruling Cases, 126, and notes; 22 Cyc. 485. It is presumed on the day of the trial that the defendant understands the general purport of the information. If it really fails to charge a public offense, that is a matter that can be raised at the trial. The appellant purports to raise the question that the information fails to state such a public offense, but the objections really go to imperfections of statement, a clarification of which should be sought before trial by demurrer or by timely application for a bill of particulars.

Appellant sums up his attack on the information by saying that the *fiscal* might have alleged positively that the defendant asked for or received a bribe of $300, with the understanding or meeting of minds *(inteligencia)* that defendant should pass the applicant, Bernal, and issue his title and license to practise as a pharmacist. The information expressed this set of facts, although a little diffusely, so that perhaps a bit of inference or synthesis was necessary, but the inference was one that any man of ordinary intelligence would be bound to make. We have no doubt that the information notified the defendant that he was charged with having asked or received a bribe to pass the applicant and to issue his title and license.

Perhaps this misconception arises partially because ap-

pellant maintains that this is a prosecution under section 83 of the Penal Code, as follows:

"Every executive officer, or person elected or appointed to an executive office, who asks, receives, or agrees to receive, any bribe, upon any agreement or understanding that his vote, opinion, or action upon any matter then pending or which may be brought before him in his official capacity, shall be influenced thereby, is punishable by imprisonment in the penitentiary not less than one nor more than fourteen years; and, in addition thereto, forfeits his office, and is forever disqualified from holding any office."

But we agree with the Government that the offense here is a crime against public justice and falls within section 111 of the Penal Code, which we transcribe:

"Every person who gives or offers a bribe to a member of any municipal council or to a member of any other council, board, corporation, election committee, or other official with intent to corruptly influence such member or other official in his action on any matter or subject pending before the body of which he is a member, and any member of either of the bodies mentioned in this section or other official who receives or offers to receive any such bribe, is punishable by imprisonment in the penitentiary for a term not less than one nor more than ten years, and is disqualified from holding any public office in Porto Rico."

The defendant was a member of the Board of Pharmacy. The enumeration of the words "boards," "corporations," etc., in the section is a sufficient indication that the Legislature meant any public board. The Board of Pharmacy plays an important role to the public, is organized by the Legislature, and is in no sense a private board; that the court and counsel understood the prosecution as emanating from section 111 is clearly shown by the instructions of the court, delivered without objection, wherein the words of the said section are repeated almost verbatim.

By a motion in arrest of judgment the appellant challenged the jurisdiction of the court. Section 8 of the Code of Criminal Procedure provides:

"The jurisdiction of an offense shall be in the district court of the district where the offense has been committed."

The alleged lack of jurisdiction did not appear from the information, but at the trial it transpired that two hundred of the three hundred dollars received by the defendant was turned over to him at Manatí in the judicial district of Arecibo, while only one hundred dollars was received in the district of San Juan; and it is also an admitted fact that the original agreement to accept the said three hundred dollars was perfected in Arecibo. It is likewise true that the matriculation of Bernal took place in San Juan; that the final one hundred dollars was received here; that the questions and aswers for passing were copied by Bernal in San Juan and were turned over to the defendant here. San Juan is the place for the delivery of the title, and the Board of Pharmacy is located here.

The first count is based entirely on a theory of solicitation and the second, more properly, on the theory of the acceptance of a bribe, each of them susceptible of being considered a diffierent form of stating a single offense under section 111 of the Penal Code.

Hence the appellant argues that the first count cannot be held good as all of the alleged acts of solicitation took place in Arecibo, and as the jury may have found both or either count good, that the verdict is thereby rendered bad. But ever since the pronouncement of Lord Mansfield in *Peake* v. *Oldham,* Cooper, 275, a general verdict, as here, is to be sustained if one count is good although all the others are bad. *Classen* v. *United States,* 142 U. S. 140, 146. In this case there is no dispute over the receipt of the three hundred dollars. The struggle at the trial was over the purpose of the acceptance of the said three hundred dollars. Everything points to a conviction under the second count of the information, and we are justified in concluding from the facts at the trial that the jury, if they found against the defendant

at all, must have found against him on the second count or have been utterly derelict in their weighing of the evidence as submitted to them.

We agree with the appellant that the alleged acts of the defendant would have given jurisdiction to the District Court of Arecibo, inasmuch as there was a solicitation as well as a receipt there; but we are satisfied that the peace and dignity of The People of Porto Rico were also offended in San Juan, assuming the truth of the information. Similarly, a crime was finally consummated in San Juan although its beginnings or part of its acts took place in Arecibo. Any person who sets in motion any kind of force, physical or moral, whereby an offense is finally committed in a different place from that in which the force is initiated may be prosecuted in the place of achievement. Frequently he may be prosecuted in either place. *In re Palliser*, 136 U. S. 257; *Benson* v. *Henkel*, 198 U. S. 1, 15; *Hyde* v. *United States*, 225 U. S. 347; *United States* v. *Thayer*, 209 U. S. 39; *People* v. *Nogueras*, 23 P. R. R. 309.

Appellant, to demonstrate that the crime was committed in Arecibo, urges that the receipt of the two hundred dollars there made a complete crime without waiting for the final one hundred dollars. Similarly, a crime was complete in San Juan on the receipt by the defendant of the one hundred dollars here.

We shall postpone the so-called third assignment of error to the consideration of what was a fundamental error in the case, namely, the admission of the letter written by Dr. del Valle Sárraga, with all the surrounding circumstances. The court in its instructions sums up sufficiently well what was the theory of the defense. The acceptance of the three hundred dollars was admitted, but the defense introduced evidence tending to show that it was for the purchase of a title from a correspondence school that the appellant received the said amount from Bernal. The information charged and

the proof tended to show that questions to examinations, with their proper answers, were furnished to the candidate, Bernal, by the defendant. To offset this proof, the defendant offered evidence of experts to show that the defendant, being a man of high intelligence, of great professional capacity and extensive technical knowledge, could not have furnished answers which the said experts characterized sometimes as badly mistaken, sometimes as incomplete. Dr. del Valle Sárraga gave testimony tending to show that the answer to the first question of a series submitted to the expert was correctly answered but not very well expanded. With respect to the second question the expert said that the answer given by the student was entirely bad. To another that the answer was indifferent, and that to still another the answer was incomplete.

All the examination in chief was mere expert testimony and the court was in some doubt whether the testimony of an expert could be impeached in the same way as that of ordinary witnesses, and very properly arrived at the conclusion that it could. While Dr. del Valle was testifying a letter from him to the defendant was offered in evidence, the prosecution maintaining, if we follow the theory, that the letter tended to show a strong personal friendship between del Valle and the appellant. At the outset let us say that no court should, in its discretion, permit the mere matter of friendship to be unduly stressed in evidence to attack the credibility of a witness. The letter was offered in evidence while Dr. del Valle Sárraga was on the stand, but not admitted by the court. Subsequently, while the defendant was testifying, the letter was admitted. It is as follows:

"FRIEND CLEMENTE:

"Not having time to see you personally and in order not to attract attention, I have decided to write to you briefly concerning a matter of great importance to you, requesting, of course, that you do not mention it to the other members of the board and also that you destroy this letter as soon as you have read it. The pur-

pose is that with your independence of character and proverbially good judgment you will correct radically certain deficiencies which may do harm to all of us.

"I know positively that twenty-four hours before the examination six of the ten questions in the subjects set for the following day are known on the streets. 'The countrymen,' as my pupils call many of those who come to be examined without any preparation and depending only on the subterfuges of the last hours, boast after the examination of the immunity which they enjoy not only in securing a part of the programs beforehand but even in exchanging papers, and in one case which I know of in an examination which was passed, papers prepared after the examination were substituted for those written at the time of the examination. If you desire specific facts I can give them to you, although my object is not to create any friction as it would be natural to suppose, but that with the energy which you know how to display when it is necessary, you put a stop to this by proposing the proper means to the board without reference to any particular case.

"Hence it is that my pupils of the first year wish to take the examinations of the last two years without knowing anything of the second and third and hence come also the continuous libels which are being written against me and the board. If it were not that I see a scandal coming unless this is remedied immediately and that on the board I have friends and associates whom I am bound to esteem highly and to defend in all circumstances, I would not dare to write this to you even in this strictly confidential manner. And perhaps abusing the fact that we have been double associates, I am going to take the liberty to give you some ideas as to a remedy and hope they may be of some use to you:

"Arrange that from this very day the programs be drafted at the moment of the examination and not taking up the questions of the day before. In all cases submit the candidates to a *brief oral examination* on the same questions of the examination *or others similar* when the candidate retires and when he delivers his papers and thus arrive at the conclusion that he has not copied. You may be sure that in writing you this I thought in good faith to do my associates a service and to defend the interests of my pupils, as is my duty.

"I shall keep the contents of this letter absolutely secret and hope that your proper action will produce salutory changes without

attracting the attention of anyone or exciting the sensitiveness of the other members.

"This favor which I ask of you in strictest justice will be appreciated by

"Your sincere friend,

(Signed)     "RAFAEL DEL VALLE SÁRRAGA."

The defendant, having made a number of protests before, made a formal objection as follows:

"By leave of the court the defense notes an exception on the following grounds: 1. The document referred to is a letter written by Dr. del Valle Sárraga in which the said doctor displays no partiality whatever in favor of the accused. 2. On the contrary, the contents of the letter show a bias against the accused. 3. In order to demonstrate the relations existing between Dr. del Valle and the accused by means of this letter the testimony of Dr. del Valle should be considered and not that of the accused. 4. The question asked by the district attorney which caused the introduction of this letter does not refer to anything brought out in the direct examination. 5. The only apparent purpose of the introduction of the letter is to put before the jury accusations against Clemente Ramírez not made in the direct evidence but by the indirect and inadmissible means of a letter."

We have described the testimony in chief of Dr. del Valle. While we are not experts, the said testimony has all the earmarks of being a perfectly full, fair, and frank declaration by the witness. It was expert testimony and one of the best ways of impugning its correctness would have been by the introduction of other expert chemists, of whom there are many in the Island, easily at the command of The People of Porto Rico. No attempt was made to show that the facts of science testified to by Dr. del Valle were false. Every presumption of law and of common sense was in favor of the truth of a public statement of this character, as the facts of chemistry, contrasted with the facts of medicine, are readily susceptible of demonstration and about which, at least with regard to the simple chemistry here involved, few experts would differ. The facts taught a group of candidates

for pharmacy must necessarily be more or less fixed. Unless, then, the Government knew or had reason to believe that the statement of Dr. del Valle was false, it had no right to take up the time of the court in attempting to attack his credibility. The record shows that from the time that Dr. del Valle first testified there was ample opportunity for the Government to have investigated the truth or falsity of Dr. del Valle's statements, being physical facts in nature and depending very little on the conscience of a particular witness.

When Dr. del Valle was interrogated about his relations with the appellant he stated that his relations were friendly, but rather of a professional than of a personal nature, and there was nothing in the letter to contradict this statement. As it contained a lot of proof, and even logical proof, that examinations were being copied, it ought not to have been admitted in evidence under the guise of contradicting or impugning a witness, unless it really did tend to contradict or impeach his testimony. If the object was to prove the friendship between the two men and del Valle had denied the friendship, there were other ways of proving this friendship than by the dubious expedient of introducing a letter containing logical, but irrelevant, matter that probably could never legally have been brought to the attention of the jury in any other way at the trial.

A party who on cross-examination interrogates an adverse witness as to interest, bias, prejudice, or ill feeling, or matters tending to show such interest or feeling, is not bound by his denial but may contradict him by other evidence, the matter not being collateral in its nature. *People* v. *Wong Chuey,* 117 Cal. 624, 49 Pac. 833; 40 Cyc. 2674.

As bearing upon credibility, it may be shown and considered whether the relations of a witness with or his relations toward a party are friendly or the reverse. *People* v. *Anderson,* 105 Cal. 32, 38 Pac. 513; 40 Cyc. 2656.

But a witness cannot under pretense of impeachment, or preparation therefor, be interrogated as to matters not rel-

evant to his credit and which the cross-examining party has no right to bring out for other purposes. 40 Cyc. 2566, and cases cited on page 2568.

It is not proper to bring out matters which, even if true, would not have any legitimate tendency to lessen the credibility of a witness. *Ducharme* v. *Holyoke Street Ry. Co.,* 203 Mass. 384, 89 N. E. 561; 40 Cyc. 2572.

We are at a loss to understand the strenuous insistence of the *fiscal* in getting this letter before the jury, unless it was to show the public rumor and other matters therein tending to show defendant's connection with the crime. This public rumor was permitted to go before the jury practically without restriction. The court, it is true, at the time of its admission limited the effect thereof to the purpose of contradicting Dr. del Valle. Technically, the letter ought only to have been admitted while Dr. del Valle himself was on the stand and when he could have an opportunity to explain it, in accordance with the well-known principles of evidence as set out in sections 156 and 159 of the Law of Evidence. The limitation the court put upon this letter was made after the conclusion of a heated discussion as to whether the letter was admissible or not. The court in its instructions never attempted to limit the effect of the letter or the use to which it could be put. The letter, in point of fact, was considered by the jury in its entirety. Even if the letter had been admissible, we should still see error in this case as there was no due limitation placed upon the letter.

The rule of law, with certain exceptions, rejects hearsay evidence, although logical. Section 19, Law of Evidence, Laws 1905, p. 72; 16 Cyc. 1192.

A public rumor is one of the most insidious forms of hearsay evidence. Chamberlayne, Vol. 4, par. 2572; 16 Cyc. 1213; 34 Cyc. 1891.

In this case we are bound to hold that the defendant was partially tried by public rumor. In this regard he was not confronted with the witnesses against him, as required by

section 11 of the Code of Criminal Procedure, but was confronted with a public rumor, brought before the jury under the guise of contradicting a witness,—the same sort of conduct that we reproved in the case of *People* v. *Rojas,* 16 P. R. R. 238.

In the case of *People* v. *Ortiz,* 22 P. R. R. 633, likewise, the dissenting judges, agreeing with the majority on this point, drew attention that evidence otherwise admissible was attempted to be introduced under the guise of impeaching the character of the defendant. It is not possible to cross-examine or even analyze public rumor.

Under the laws of Porto Rico the defendant has a right to a jury trial in the case of a felony. For a number of centuries certain kinds of evidence, secondary or otherwise incompetent, like hearsay, have been kept from English and American juries by the Laws of Evidence. The Law of Evidence has been deliberately introduced into Porto Rico, and the courts are bound thereby. It will not do to permit a bit of probatory matter to go before the jury and then attempt to say that the introduction of this evidence that ought to have been excluded was harmless as the great preponderance of the evidence was against the defendant in any event. If the great preponderance of the evidence was against the defendant, then there was less excuse on the part of the *fiscal* strenuously to insist upon the admission of the letter of Dr. del Valle Sárraga. If the evidence which has a probative effect can be presented to the jury by the *fiscal* and afterwards its admission is urged as harmless, we are in the situation of having a man tried for a felony, not by a jury, but practically by the court. If this letter was not important to convince the jury of the guilt of Clemente Ramírez de Arellano, then why was the Government insisting on its introduction against the protests and well-founded objections of the appellant? The *fiscal* of the District Court of San Juan probably knew better than anyone else whether this letter was necessary to convince the jury in this case. The preser-

vation of jury trial in felony cases we consider essential to liberty in Porto Rico, and indirect ways of bringing public rumors to a jury must be discouraged.

The admission of this letter was prejudicial because it was evidently introduced in evidence in a way that brought a public rumor before a jury. It was prejudicial because it permitted the jury to doubt the testimony of Dr. del Valle when he was making statements presumably in favor of the defendant. If the testimony of Dr. del Valle was true and there is, as we have seen, a presumption in his favor, the defendant was entitled to the benefit of this testimony unimpugned.

We have referred to the fact that the court in its instructions said nothing limiting the effect of this letter. In point of fact, the court in its instructions emphasized the letter. In this regard the court said:

"Dr. del Valle Sárraga was also called as an expert witness. In the cross-examination of this witness the district attorney showed him a letter signed by the witness as a friend of defendant Ramírez and as the head of a school where various students are instructed in pharmacy and have to pass examinations before the Board of Pharmacy.

"As the gentlemen of the jury will remember, this letter brought up a spirited discussion before the court. The court had doubts at first as to whether this letter should be admitted in evidence and deferred its ruling, but later the district attorney examined the defendant himself on the different particulars of the letter in such a way that the court had no doubt as to the origin of the letter and therefore admitted it.

"I desire to make no reference to the jury regarding the origin of the admission of that letter because the most important discussion took place in the presence of the jury. The defense agreed to discuss the question before the jury and for that reason the court did not order you to retire.

"That letter has been fully examined and discussed in the brilliant arguments made before you by the distinguished attorneys for the People and for the defendant.

"In that letter, which will be placed in your hands, Dr. Sárraga speaks of a public rumor concerning the abnormal manner in which

certain proceedings are conducted by the Board of Examiners in pharmacy and to which he calls the attention of his friend, to whom the letter was written in order that he should use all of his influence to the end that this state of things should cease and be completely corrected.

"The court has no doubt that this letter was properly admitted and therefore admitted it, otherwise it would have been excluded.

"This letter as well as the other documents admitted will be given to you for examination and in order that you may attach to them such weight as you think they deserve.

"After this testimony of the accused expert witnesses for the defense were again called, among them two more experts, one of whom was Dr. del Valle Sárraga who testified concerning the basis of the letter. He explained his reasons for writing the letter and said that it was based on information received from his pupils."

If the foregoing instructions be examined it will be seen that the court not only failed to limit carefully the use to be made of the letter of Dr. del Valle, but again drew attention to the public rumor that was contained therein. In the circumstances of this case, as already outlined, we think these comments would have been prejudicial error even if Dr. del Valle had denied his friendship with Clemente Ramírez de Arellano. While this letter was being offered in evidence, but before it was admitted, the record shows that the *fiscal* commenced to read some of its contents aloud. The jury was present and the words uttered showed the nature of the letter. It is improper for the *fiscal* to do this and the defence objected but took no exception. If the letter had been excluded it would be a serious question whether this reading the contents aloud, although done in good faith, was not prejudicial error even without exception.

The third assignment of error refers to the instructions. The appellant concedes that no exception was taken to any part of the charge of the court. Following the uniform jurisprudence of this court we shall generally not notice errors with regard to the instructions which are not excepted to, unless we are satisfied that the error is fundamental. Counsel

for a defendant are the best judges of whether the court is
giving them all they are entitled to, and in this case, at the
conclusion of the charge of the court, counsel for defendant
asked for additional instructions and failed to make any
comment on the instructions as already given. This conduct
is almost universally held to be a waiver of error. In the
absence of an exception the appellate court must presume
that counsel were fairly well satisfied with the instructions.
Were it otherwise, the State would be subject to the expense
of frequent new trials. We shall, however, comment on one
or two of the instructions.

The matter of reasonable doubt was not very well ex-
plained to the jury, as follows:

"A reasonable doubt is a matter difficult to explain. A reason-
able doubt is not a capricious doubt, but a doubt based upon the
logic of the controverted facts themselves; it is the doubt which
arises from the lack of some element of proof, from anything that
may arise during the trial and founded upon the facts discussed.

"If you think that such reasonable doubt exists in this case,
it is your duty to give the defendant the benefit of the same and
to acquit him."

In the case of *People* v. *Nevárez*, 10 P. R. R. 91, 98, quot-
ing from *Hopt* v. *Utah*, 120 U. S. 430, we indicated a form
of instructions on reasonable doubt. Sometimes the courts
have sustained instructions which simply tell the jury that
they must not convict if they have a reasonable doubt. On
the other hand, it is sometimes advisable for the court to
define to some extent the nature of reasonable doubt.

The court failed to instruct the jury with respect to the
presumption of innocence, and appellant cites us to *People*
v. *McCord*, 73 Mich. 25, as showing that courts have reversed
without exception taken to such a failure. Appellant admits,
however, that such is not the practice in Texas, nor is it so
in other states; and in *People* v. *Wah Hing*, 15 Cal. App.
195, 114 Pac. 416, it was said that the failure to instruct as
to the presumption of innocence is not error if the court tells

the jury that they must be satisfied of the guilt of the defendant beyond a reasonable doubt. *People* v. *Coffin,* 156 U. S. 446, opinion by Justice White is an illuminating case in this regard. Even if not requested the court in the interests of justice should always instruct on the presumption of innocence. The failure to do so when requested was ground of reversal in the case *People* v. *Coffin, supra.*

The rest of the errors as to instructions come within the principle of waiver by failure to except. The court below was somewhat mistaken as to its duty in regard to comments on the proof. The court says that the law imposes a duty on it, that it must express its opinion with regard to all the legal points happening during the trial, and apparently has the idea that it must give a resumé of all the facts. That is not the case. The law of March 9, 1911, to amend paragraph 8 of section 233 of the Code of Criminal Procedure provides the method or practice that should be followed by the judge in charging the jury with which he should comply. In any event where the court has entered minutely into the facts it should avoid an expression of opinion against the defendant and always end by telling the jury that they are the sole and exclusive arbiters of questions of fact.

We shall examine no more of the charge, but we may add that a fair number of the criticisms of appellant might have been available on appeal if objection had been made in the court below and exception taken.

With regard to the fourth assignment of error, we think the appellant is mistaken with respect to the nature of a check. A check, under section 534 of the Code of Commerce, is an instrument which permits the maker to withdraw for his benefit or for that of a third person the whole or part of the funds he may have at his disposal in the hands of the depositary. The fact that it is given to a third person for an illegal purpose could not affect the question of whether a defendant had, in point of fact, received a thing of value, especially after the check was cashed. It was no more illegal

than would have been the similar delivery of the cash. · Hence we hold there was no variance in the introduction in evidence of the giving of these checks. Defendant actually got the cash on them and previously accepted them as payment.

We think it was mere surplusage to say in the information that the defendant was a member of the board "legally named." The information would have held if he had been shown to be an official *de facto*.

We do not think that it was error to permit the *fiscal* to attempt to show by the witness Bernal that he was not in a legal condition to take the examination. The proof of the place of his studies and where he had studied would be harmless ·error at best.

With regard to the examination of the witness Enrique Arnaldo, to the effect that he had copied the same questions and answers that were copied by the defendant, we think it was competent evidence independently of the fact that his statements tended to corroborate Bernal, and this because the evidence tended to show a scheme on the part of the defendant and others to admit incompetent persons to examination and give them titles. *People* v. *Bidleman,* 104 Cal. 608, 38 Pac. 502; *People* v. *Sternberg,* 111 Cal. 3, 43 Pac. 198; 12 Cyc. 411; 8 R. C. L. 202 *et seq.* We should warn the Government, however, that a public rumor could not be used for this purpose.

It was error to ask the witness Calderón Aponte whether a prosecution had not been begun against him. Until a man is convicted there is a presumption of innocence in his favor, and the fact of a prosecution does not tend to impeach him. It is unnecessary to dwell upon this as the case is going back for a new trial and the error can be avoided.

As this case must go back for a new trial, we should like to warn the Government that not only the public rumor must not be introduced, nor must any attempt be made to present before the jury any of the considerations of this court. We have ·feared in some cases that the comments of this court

have been practically used as evidence in cases sent back for new trials.

From the whole record we are not satisfied that the appellant had the fair trial called for under our system of laws, and the judgment must be reversed and the case sent back for a new trial.

*Reversed and remanded for a new trial.*

Chief Justice Hernández and Justices del Toro, Aldrey and Hutchison concurred.