EL PUEBLO, DEMANDANTE Y APELADO, *v.* RAMÍREZ DE ARELLANO, ACUSADO Y APELANTE.

APELACIÓN procedente de la Corte de Distrito de San Juan, Sección Segunda, en causa por delito de soborno.

No. 1075.—Resuelto en mayo 21, 1917.

ACUSACIÓN—VAGUEDADES O IMPERFECCIONES EN SU EXPOSICIÓN—EXCEPCIÓN PERENTORIA—ESPECIFICACIÓN DE PARTICULARES.—Si la acusación es razonablemente susceptible de poder ser interpretada en el sentido de que en ella se imputa un delito público, cualquiera vaguedad o imperfección en su exposición se considera que ha sido renunciada cuando el acusado no opone a ella excepción perentoria o deja de radicar una solicitud para que se especifiquen los hechos (*bill of particulars*) antes del día señalado para el juicio.

Soborno—Junta Pública—Junta Examinadora de Aspirantes a Farmacéuticos.—La Junta Examinadora de Aspirantes a Farmacéuticos es una junta pública y no privada, por lo que está incluída dentro del término "juntas" empleado en el artículo 111 del Código Penal.

Id.—Acusación con Cargos Distintos—Solicitar y Aceptar Soborno—Veredicto Suficiente.—En una acusación por soborno contenida en dos cargos, el primero de los cuales se basa enteramente en la teoría de solicitar un soborno y el segundo en la de haberlo aceptado, cada uno de ellos es susceptible de poder ser considerado como una forma distinta de expresar un solo delito de acuerdo con el artículo 111 del Código Penal, por lo que un veredicto general se considera válido si uno de los cargos es suficiente.

Id.—Entrega del Soborno en Distritos Distintos—Jurisdicción.—Cuando una persona a quien se imputa la solicitud de un soborno recibe parte del dinero en un distrito y la otra en otro distrito, puede acusársele en cualquiera de los dos distritos. Artículo 8, Código de Enjuiciamiento Criminal.

Testigos—Credibilidad de los Testigos—Relaciones de Amistad.—Ninguna corte, dentro de su discreción, debe permitir, en el período de la prueba, que se insista indebidamente en el mero hecho de las relaciones de amistad de una persona con otra, con el fin de atacar la credibilidad de un testigo.

Peritos—Impugnación de Prueba Pericial.—El mejor medio de impugnar la corrección de una prueba pericial es presentando otros peritos.

Testigos—Repreguntas—Interés, Parcialidad, Perjuicio o Predisposición.—Una parte que en el examen de repreguntas interroga a un testigo con respecto a su interés, parcialidad, perjuicio o predisposición, no queda obligada por su negativa sino que puede contradecirlo por medio de otras pruebas, por no ser el asunto colateral por su naturaleza.

Id.—Credibilidad de los Testigos—Relaciones de Amistad.—Por tener relación con el punto referente a la credibilidad, puede alegarse y considerarse si las relaciones de un testigo con una persona, o sus relaciones hacia esa persona, son de amistad o no lo son; pero no puede ser examinado un testigo so pretexto de que va a impugnarse su veracidad, o a prepararse para ello, sobre cuestiones que no afectan a su crédito y que la parte que repregunta no tiene derecho a ponerlas de manifiesto para otros fines; ni es correcto poner de manifiesto cosas que aun siendo ciertas no tendrían una verdadera tendencia a hacer desmerecer la credibilidad del testigo.

Prueba de Referencia—Rumor Público.—El principio legal, con ciertas excepciones, rechaza la prueba de referencia aunque sea lógica (art. 19 de la Ley de Evidencia); siendo el rumor público una de las más insidiosas formas de prueba de referencia.

Soborno—Carta Admitida como Prueba que Lleva un Rumor Público al Jurado—Confrontación con los Testigos.—En este caso se alegó y trató de probar que las preguntas a los exámenes con sus debidas contestaciones fueron entregadas a un aspirante por el acusado. Este presentó prueba pericial para demostrar que él no podía, por su inteligencia, capacidad y conocimientos, haber facilitado aquellas contestaciones que los mismos peritos calificaron de equivocadas unas e incompletas otras. Mientras declaraba el perito el Fiscal ofreció como prueba una carta dirigida por aquél al acusado poniendo en su conocimiento un rumor público consistente en la forma anormal en que se conducían ciertos procedimientos ante la Junta Examinadora de Farmacia, para demostrar que existía una gran amistad entre ambos y atacar así la

veracidad del perito, pero no fué admitida por la corte. Posteriormente y mientras declaraba el acusado la carta fué admitida entonces como prueba. *Se resolvió:* que técnicamente la carta sólo debió ser admitida mientras declaraba el testigo, cuando podía tener una oportunidad de explicarla conforme a los artículos 156 y 159 de la Ley de Evidencia; que dicha carta no era admisible para contradecir o impugnar al perito pues habían otros medios para probar la amistad entre el acusado y el perito; y que la admisión de la carta fué perjudicial al acusado porque envolvía un rumor público llevado al jurado y con el que fué confrontado y juzgado el acusado, contra lo dispuesto en el artículo 11 del Código de Enjuiciamiento Criminal.

Instrucciones al Jurado—Instrucciones Adicionales—Falta de Objeciones a las ya Dadas—Renuncia—Error Fundamental.—Cuando al terminar la corte sus instrucciones al jurado el acusado solicita se den instrucciones adicionales, pero no hace objeción alguna a las ya dadas, se entiende que renuncia a cualquier error que pudiera existir, y el tribunal de apelación no lo tomará en consideración, excepto cuando se trate de un error fundamental.

Id.—Duda Razonable—Presunción de Inocencia.—Es conveniente que cuando se instruye por la corte al jurado sobre la naturaleza de la duda razonable, se defina ésta con toda claridad. Aun cuando no se le pida, debe siempre, en bien de la justicia, instruirlo también en cuanto a la presunción de inocencia.

Id.—Cuestiones de Derecho—Id. de Hecho.—La ley de 9 de marzo de 1911 enmendatoria del párrafo 8 del artículo 233 del Código de Enjuiciamiento Criminal no impone al juez el deber de expresar su opinión acerca de todas las cuestiones de derecho suscitadas durante el juicio, ni el de hacer un resumen de todos los hechos, debiendo limitarse a los términos de ese artículo.

Soborno—Entrega y Cobro de un Cheque—Cosa de Valor.—El hecho de que un cheque sea entregado a un tercero para un fin ilegal no puede afectar a la cuestión de si en realidad de verdad recibió un acusado por soborno una cosa de valor, especialmente después de haberse cobrado el cheque, pues no era más ilegal que lo hubiera sido la misma entrega en metálico.

Id.—Acusación Suficiente—Junta de Farmacia—Nombramiento Legal—Funcionarios de Facto.—En una acusación por soborno contra un miembro de la Junta de Farmacia, no es necesario alegar que el acusado era miembro de la junta "nombrada legalmente," pues la acusación siempre hubiera sido válida si hubiera demostrado que el funcionario lo era *de facto.*

Testigos — Presunción de Inocencia — Proceso Criminal — Pregunta Errónea.—Hasta tanto que una persona no haya sido declarada culpable de un delito, existe la presunción de inocencia a su favor, y el hecho relativo a un proceso criminal no tiende a desacreditarlo. Comete, por tanto, error una corte que permite que se pregunte a un testigo si no se había iniciado una causa contra él.

Nuevo Juicio—Consideraciones o Comentarios del Tribunal de Apelación.— Las consideraciones o comentarios hechos por el Tribunal Supremo en sus opiniones no deben presentarse ante un jurado o utilizarse como prueba en un nuevo juicio.

Los hechos están expresados en la opinión.
Abogado del apelante: *Sr. J. Henri Brown.*
Abogados del apelado: *Sres. Earle T. Fiddler, Attorney*

*General Auxiliar, Salvador Mestre, Fiscal del Supremo, y Luis Campillo, Fiscal del Distrito.*

EL JUEZ ASOCIADO SR. WOLF, emitió la opinión del tribunal.

En esta apelación en causa criminal la acusación formulada consta de dos cargos que son los siguientes:

"*Primero.*—El citado Clemente Ramírez de Arellano, allá entre los meses de septiembre de 1914 y enero de 1915, y en la jurisdicción del Distrito Judicial de San Juan, Puerto Rico, en ocasión de ser uno de los miembros de la Junta de Farmacia de Puerto Rico y, como tal, miembro de la Junta Examinadora de Aspirantes a Farmacéuticos, de una manera ilegal, voluntaria, corrupta y criminal, pidió un soborno a Rodolfo Bernal, aspirante a farmacéutico y quien se había de someter a examen ante dicha junta, consistente en la suma de trescientos dollars, con el entendido o en la inteligencia de entregarle a cambio de dicha suma al referido examinando Rodolfo Bernal las contestaciones correspondientes a las preguntas de cada una y todas las asignaturas que determina la ley para tales exámenes y las que habían de ser objeto de los que se celebrarían o se celebraron en el mes de enero de 1915 en esta ciudad de San Juan; y las cuales era obligación aprobar para poder obtener el título y la licencia para ejercer la profesión de farmacéutico en Puerto Rico, entregándole tales contestaciones en la inteligencia de que aquél las copiaría y una vez copiadas las devolvería junto con las copias que de ellas hiciera a fin de, en virtud de los $300 pedidos a Rodolfo Bernal y, conforme a lo entendido y convenido, se comprometió a calificarle como buenos los exámenes de esa manera copiados y falseados, dándole un promedio suficiente para aprobar los mismos y otorgarle ilegalmente el título y con él la licencia para ejercer la profesión de farmacéutico en la Isla de Puerto Rico, lo que en aquel entonces era una cuestión pendiente en la Junta de Exámenes y sometida a su decisión.

"*Segundo.*—El citado Clemente Ramírez de Arellano, allá entre los meses de septiembre de 1914 y febrero de 1915, en la jurisdicción del Distrito Judicial de San Juan, en ocasión de ser uno de los miembros de la Junta de Farmacia, y, como tal, miembro de la Junta Examinadora de Aspirantes a Farmacéuticos para cuyos cargos fué legalmente nombrado, de una manera ilegal, voluntaria, corrupta y criminal, convino en recibir y recibió de Rodolfo Bernal un soborno consistente en la suma de trescientos dollars siendo el referido Rodolfo Bernal uno de los aspirantes que se había de presentar a exámenes ante la Junta Examinadora; admitiendo dicha suma en la inteligencia

o con el entendido de entregarle a cambio las contestaciones correspondientes a las preguntas de cada una y todas las asignaturas que determina la ley para tales exámenes y las que habían de ser objeto de los que se celebrarían o se celebraron en el mes de enero de 1915, en la ciudad de San Juan antes dicha; y los cuales era obligación aprobar para poder obtener el título y licencia para el ejercicio de la profesión de farmacéutico; entregándole tales contestaciones en la inteligencia de que aquél las copiaría y una vez copiadas se las devolvería junto con las copias que de ellas hiciera, a fin de, en virtud de los $300 convenidos y recibidos de Rodolfo Bernal y, conforme a lo entendido y convenido calificarle como buenos los exámenes de esa manera copiados y falseados, dándole un promedio suficiente para aprobar los mismos, y, asimismo obtener que los demás miembros de la Junta Examinadora los calificaran como buenos y, de esa manera ilegal otorgarle el título y con él la licencia para el ejercicio de la profesión de farmacéutico en la Isla de Puerto Rico; lo que en aquel entonces era una cuestión pendiente en la referida Junta Examinadora, en su carácter oficial y sometida a su decisión. Este hecho es contrario a la ley para tal caso prevista y a la paz y dignidad de El Pueblo de Puerto Rico. (Firmado) Luis Campillo, Fiscal del Distrito.''

En la exposición del caso se dice que fué presentada una excepción perentoria (*demurrer*) en la corte inferior, pero no ha sido incluída en los autos enviados a esta corte. Dichos autos demuestran que el acusado hizo la alegación de no culpable el día en que le fué leída la acusación. No existe nada en los autos que indique que el acusado obtuvo luego permiso en la corte inferior para formular una excepción perentoria (*demurrer*), o que hubiera sido presentada alguna excepción perentoria hasta el día del juicio. En el caso de *El Pueblo* v. *París,* (pág. 111), este tribunal resolvió que es demasiado tarde esperar hasta el día del juicio para formular una excepción perentoria (*demurrer*) con tal carácter. Al llegar el día del juicio se ha renunciado ya a cualquier defecto que pueda contener la acusación y que en la ley común podría haber quedado subsanado por el veredicto. Si la acusación es razonablemente susceptible de poder ser interpretada en el sentido de que en ella se imputa un delito pú-

blico, cualquier vaguedad o imperfección en su exposición se considerará que ha sido renunciada. *People* v. *Matuszewski*, 138 Cal. 533; *Rex* v. *Perrot*, 8 English Ruling Cases, 116; *Heyman* v. *Reg.*, 8 English Ruling Cases 126 y notas; 22 Cyc. 485. Se presume que en el día del juicio el acusado tiene conocimiento de cuál es el objeto general de la acusación. Si en ella se deja realmente de alegar un delito público, esa es una cuestión que puede levantarse en el juicio. El apelante trata de promover la cuestión de que en la acusación no se imputa tal delito público, pero las objeciones que presenta en realidad se refieren a imperfecciones en cuanto a su exposición, las que debe procurarse que queden aclaradas antes del juicio mediante una excepción perentoria (*demurrer*), o radicando en tiempo una solicitud para que se especifiquen los hechos (*bill of particulars*).

El apelante resume su ataque a la acusación diciendo que el Fiscal debió haber alegado positivamente que el acusado solicitó o recibió un soborno de $300, en el entendido o inteligencia de que el acusado pasaría al aspirante Bernal y la expediría su título y licencia para ejercer como farmacéutico. La acusación contenía todos estos hechos, aunque algo difusamente, de modo que quizás fué necesario hacer una pequeña inferencia o síntesis, pero era una inferencia que cualquier hombre de inteligencia ordinaria tendría necesariamente que hacer. No tenemos dudas de que con la acusación quedó notificado el acusado de que se le imputaba el hecho de haber solicitado y recibido un soborno para pasar al aspirante y expedirle su título y licencia.

Tal vez si esta mala inteligencia surge en parte por alegar el apelante que ésta es una causa seguida de acuerdo con el artículo 83 del Código Penal, el cual prescribe lo siguiente:

"Todo funcionario ejecutivo o persona elegida o nombrada para un cargo ejecutivo, que pidiere, aceptare o conviniere en aceptar cualquier soborno con el entendido o en la inteligencia de que tal soborno habrá de influir en su voto, opinión o determinación en cualquier

asunto pendiente o sometido a su decisión, en su calidad de funcionario, incurrirá en pena de presidio por un término mínimo de un año y máximo de catorce años, perdiendo además su empleo y quedando por siempre inhabilitado para ejercer ningún cargo público.''

Pero convenimos con el Gobierno en que el delito cometido en este caso es contra la justicia pública y que está comprendido en las prescripciones del artículo 111 del Código Penal que a continuación transcribimos:

''Toda persona que sobornare o intentare sobornar a algún concejo municipal o miembro de alguna junta, corporación, comisión electoral u otro funcionario con objeto de influir en la resolución de dicho miembro o funcionario, en algún asunto pendiente ante el cuerpo a que perteneciere éste; así como todo miembro de cualquiera de los cuerpos mencionados en este artículo que recibiere o admitiere dicho soborno, incurrirá en la pena de presidio por un término máximo de diez años, quedando incapacitado para ejercer cargo público en Puerto Rico.''

El acusado era un miembro de la Junta de Farmacia. La enumeración hecha en el artículo citado de las palabras ''juntas,'' ''corporaciones,'' etc., indica de modo suficiente que la idea de la Legislatura fué referirse a cualquier junta pública. La Junta de Farmacia desempeña un papel importante para el público, está organizada por la Legislatura y bajo ningún concepto es una junta privada; que tanto la corte como el abogado entendieron que la acusación se fundaba en el artículo 111 está claramente demostrado por las instrucciones dadas por la corte al jurado y a las cuales no se formuló objeción, en cuyas instrucciones se repiten las palabras de dicho artículo casi al pie de la letra.

Por medio de una moción para suspender el pronunciamiento de la sentencia (*in arrest of judgment*) impugnó el apelante la jurisdicción de la corte. El artículo 8 del Código de Enjuiciamiento Criminal prescribe lo siguiente:

''La jurisdicción correspondiente a los delitos, radica en la corte de distrito del respectivo distrito judicial dentro del cual se cometieren.''

La supuesta falta de jurisdicción no aparecía de la acusación, pero en el juicio se hizo conocido el hecho de que de los trescientos dólares recibidos por el acusado doscientos le fueron entregados en Manatí dentro del Distrito Judicial de Arecibo y que solamente recibió cien dólares en el distrito de San Juan; y también es un hecho admitido que el primitivo convenio en aceptar dichos trescientos dólares quedó perfeccionado en Arecibo. Es asimismo cierto que la matrícula de Bernal se hizo en San Juan; que los últimos cien dólares se recibieron aquí; que las preguntas y contestaciones para pasar en los exámenes las copió Bernal en San Juan y se las entregó en esta ciudad al acusado. San Juan es el sitio para la entrega del título y la Junta de Farmacia está establecida aquí.

El primer cargo se basa enteramente en la teoría de solicitar un soborno y el segundo más propiamente en la de haberlo aceptado, cada uno de los cuales es susceptible de poder ser considerado, como una forma distinta de expresar un solo delito de acuerdo con el artículo 111 del Código Penal.

Alega, por tanto, el apelante que el primer cargo no puede ser considerado suficiente, pues todos los actos de solicitación que han sido alegados tuvieron lugar en Arecibo y que como el jurado puede haber encontrado ambos cargos suficientes, o cualquier de los mismos, que el veredicto emitido es malo por ese motivo. Pero desde el pronunciamiento hecho por Lord Mansfield en el caso de *Peake* v. *Oldham,* Cowper, 275, un veredicto general, como el de este caso, ha de considerarse como válido si uno de los cargos es suficiente aunque todos los demás sean malos. *Claassen* v. *United States,* 142 U. S. 140, 146. En este caso no hay disputa alguna sobre el recibo de los trescientos dólares. El esfuerzo hecho en el juicio fué respecto al objeto que había en aceptar dichos trescientos dólares. Todo tiende a establecer la culpabilidad del acusado bajo el segundo cargo de la acusación y es-

tamos justificados en llegar a la conclusión, en vista de los hechos del juicio, de que si el jurado encontró culpable al acusado de algún delito tuvo que haber sido de acuerdo con el segundo cargo, o de lo contrario fué completamente negligente al pesar la prueba sometida a su consideración.

Convenimos con el apelante en que los supuestos actos del acusado hubieran conferido jurisdicción a la Corte de Distrito de Arecibo, puesto que allí se solicitó y recibió un dinero, pero estamos convencidos de que la paz y dignidad de El Pueblo de Puerto Rico también fueron ofendidas en San Juan, admitiendo la veracidad de la acusación. De igual modo quedó consumado finalmente un delito en San Juan aunque su comienzo o parte de sus actos tuvieron lugar en Arecibo. Toda persona que pone en acción cualquier clase de fuerza, bien sea física o moral, por virtud de la cual se comete finalmente un delito en un lugar distinto de aquel donde se inició la fuerza, podrá ser acusada en el sitio de su ejecución. Frecuentemente puede acusársele en cualquiera de los dos lugares. *In re Palliser,* 136 U. S. 257; *Benson* v. *Henkel,* 198 U. S. 1, 15; *Hyde and Schneider* v. *United States,* 225 U. S. 347; *United States* v. *Thayer,* 209 U. S. 39; *El Pueblo* v. *Nogueras,* 23 D. P. R. 332.

El apelante para demostrar que el delito fué cometido en Arecibo, alega que por el hecho de ser recibidos allí los doscientos dólares hubo un perfecto y completo delito sin que hubiera de esperarse a que se entregaran los últimos cien dólares. Asimismo hubo un delito completo en San Juan al recibir el acusado los cien dólares aquí.

Pospondremos el llamado tercer señalamiento de error hasta que consideremos lo que fué un error fundamental en este caso, o sea, la admisión de la carta escrita por el Dr. del Valle Sárraga, con todas las circunstancias que la rodeaban. La corte en sus instrucciones condensa suficientemente bien la teoría que presentó la defensa. Fué admitida la aceptación de los trescientos dólares, pero la defensa presentó

prueba tendente a demostrar que eran para comprar un tí-
tulo de una escuela por correspondencia, que el apelante re-
cibió dicha suma de Bernal.  En la acusación se alegó, y la
prueba tendió a mostrar, que las preguntas a los exámenos
con sus debidas contestaciones fueron entregadas al aspi-
rante Bernal por el acusado.  Para destruir esta prueba el
acusado presentó prueba pericial con el fin de demostrar que
siendo el acusado un hombre de inteligencia, de gran capa-
cidad profesional y extensos conocimientos técnicos, no po-
día haber facilitado contestaciones que los mismos peritos
dijeron unas veces que estaban muy equivocadas y otras que
eran incompletas.  La declaración del Dr. del Valle Sárraga
tendía a demostrar que la contestación a la primera pregunta
de la serie sometida al perito fué dada correctamente, pero
no muy bien desarrollada.  Con respecto a la segunda pre-
gunta el perito dijo que la contestación del alumno era com-
pletamente mala.  Que la contestación a otra pregunta podía
pasar, y refiriéndose todavía a otra contestación, manifestó
que estaba trunca.

Todo el interrogatorio directo fué meramente pericial y
la corte tuvo alguna duda respecto a si la declaración de un
perito podía ser atacada en la misma forma que la de otro
testigo cualquiera y muy propiamente llegó a la conclusión
de que podía serlo.  Mientras declaraba el Dr. del Valle, fué
presentada como prueba una carta dirigida por éste al acu-
sado, sosteniendo la acusación, si es que seguimos su teoría,
que dicha carta tendía a probar que existía una gran amis-
tad entre el Sr. del Valle y el apelante.  Diremos al empe-
zar que ninguna corte dentro de su discreción debe permi-
tir que se insista indebidamente en el mero hecho de la amis-
tad de una persona con otra en el período de la prueba, con
el fin de atacar la credibilidad de un testigo.  La carta fué
presentada como prueba mientras estaba declarando el Dr.
del Valle Sárraga, pero no fué admitida por la corte.  Pos-

teriormente y hallándose declarando el acusado fué admitida la carta. Dicha carta dice lo siguiente:

"AMIGO DON CLEMENTE: Sin tiempo para verle personalmente y con el fin de no llamar la atención, decido escribirle dos letras sobre un asunto de capital importancia para Ud., suplicándole, por supuesto, absoluta reserva para sus compañeros del *Board* y asimismo la destrucción de esta carta tan pronto como se entere de ella. Se trata de que Ud., con su independencia de carácter y buen criterio proverbiales, remedie de raíz ciertas deficiencias que pueden hacernos daño a todos.

"Me consta de una manera positiva que 24 horas antes de los exámenes, se saben en la calle, seis de las diez preguntas, de las dos materias que tocan en turno para el día siguiente. 'Los del campo,' como llaman mis alumnos a muchos de los que vienen a examinarse sin preparación alguna, y solamente confiados en las triquiñuelas de última hora, hacen alarde después que se examinan, de la inmunidad de que gozan, no sólo consiguiendo parte de los programas por anticipado, sino hasta cambiando papeles; y hasta se ha dado el caso de uno, que afirma que en los exámenes pasados sustituyó papeles hechos después de los exámenes por los que hizo en el examen mismo. Si Ud. desea datos concretos yo puedo dárselos, aun cuando mi objeto no es el chisme, como es natural que así sea, sino que Ud. con las energías que Ud. sabe desplegar cuando es así necesario, ponga remedio a esto, proponiendo medidas apropiadas dentro del seno del *Board*, y sin que note nadie que esto obedece a cosa alguna concreta. De ahí nace el que mis alumnos de primer año, se quieran examinar, sin saber nada de segundo y tercero, de estos dos últimos años. De ahí nacen también los continuos libelos que están escribiéndose en contra mía y del *Board*. Y de no ser así, porque veo venir el escándalo si no se remedia esto hoy, ahora; y porque dentro del *Board* tengo amigos y compañeros a quienes tengo el deber de estimar profundamente y defenderlos bajo toda circunstancia, no me atrevería a escribirle esto a Ud., ni aun en la forma privadísima en que lo hago. Y, abusando quizás, del hecho de que hemos sido doblemente compañeros, me voy a tomar la libertad de darle algunas ideas, como remedio, por si le son de alguna utilidad.

"Disponer que en lo sucesivo y desde hoy mismo, se redacten los programas en el momento del examen y no recogiéndose las preguntas el día anterior. En todos los casos someter a los candidatos a un *examen oral ligero* sobre las mismas preguntas del examen, *u otras*

*relacionadas,* en el momento de retirarse el candidato y al entregar sus papeles, y así llegar a la conclusión de que no ha copiado.

"Puede estar seguro de que al escribirle esto he creído de buena fe prestarle un buen servicio a mis compañeros y que he defendido los intereses de mis alumnos, como es mi deber.

"Yo guardaré absoluta reserva y confío en que sus acertadas medidas darán lugar a cambios saludables, sin que nadie se aperciba, ni se exalte la delicadeza del vecino.

"Por este servicio que le pido, dentro de la más estricta justicia, le estará agradecido su affmo. amigo,

"(Firmado)        R. del Valle Sárraga."

Después de haber hecho antes el acusado varias protestas hizo una objeción formal en estos términos:

"La defensa anota con permiso de la corte, una excepción, fundada en los siguientes motivos: 1. El documento de que se trata es una carta del Dr. del Valle Sárraga, de donde no resulta en manera alguna un prejuicio favorable de dicho doctor con respecto al acusado; 2. Porque por el contrario, del contenido de la carta resulta un prejuicio adverso al mismo acusado; 3. Porque para demostrar las relaciones existentes entre el Dr. del Valle Sárraga y el acusado, por medio de este documento, debió hacerse, no en la declaración del acusado, sino en la declaración del Dr. del Valle Sárraga; 4. Porque la pregunta del Fiscal que ha determinado la presentación de este documento, no se refiere a ninguna materia que haya sido objeto del interrogatorio directo; 5. Porque el único objeto manifiesto de la presentación del documento, es llevar ante la consideración del jurado, acusaciones dirigidas contra Clemente Ramírez, no por medio de prueba directa sino por medios indirectos e inadmisibles de una carta."

Hemos descrito la declaración directa del Dr. del Valle. Aunque no somos peritos, dicha declaración reúne todos los caracteres de una verdadera declaración completa, razonable y franca hecha por el testigo. Era una prueba pericial y uno de los mejores medios de impugnar su corrección hubiera sido presentando otros peritos químicos de los cuales hay muchos en la isla y que El Pueblo de Puerto Rico puede fácilmente tener a su disposición. No se trató en manera alguna de demostrar que fueran falsos los hechos científicos declarados por el Dr. del Valle. Toda presunción de

ley y del sentido común estaba en favor de la veracidad de una declaración pública de esta naturaleza, pues los hechos de la química, en contraste con los de la medicina, son susceptibles de poder ser demostrados fácilmente y respecto a los cuales, por lo menos en lo que se refiere a la simple química envuelta en este caso, serían muy pocos los peritos que estarían en desacuerdo. Los hechos de química que se enseña a un grupo de candidatos a farmacéuticos tienen necesariamente que ser más o menos determinados. Entonces, a menos que el Gobierno supiera o tuviera motivo para creer que la declaración del Dr. del Valle era falsa no tenía derecho a tomar el tiempo de la corte tratando de atacar su credibilidad. Consta de los autos que desde la fecha en que declaró primeramente el Dr. del Valle el Gobierno tuvo suficiente oportunidad para haber investigado la verdad o falsedad de las manifestaciones hechas por el Dr. del Valle, por ser hechos materiales en la naturaleza y que dependen muy poco de la conciencia de un testigo en particular.

Al ser interrogado el Dr. del Valle acerca de las relaciones que tenía con el apelante declaró que sus relaciones eran amistosas, pero más bien de carácter profesional que personal, y en la carta no había nada que contradijera esta manifestación. Como dicha carta contenía muchas pruebas y aun prueba lógica de que se estaban copiando los exámenes, no debió haber sido admitida como prueba so pretexto de contradecir o impugnar a un testigo, a menos que realmente tendiera a contradecir o a impugnar su declaración. Si el objeto fué probar la amistad que había entre las dos personas, y hubiera negado del Valle esa amistad, había otros medios de probar dicha amistad que no fuera por la forma dudosa de presentar una carta que contiene una materia lógica pero impertinente y que probablemente jamás podía haber sido presentada legalmente a la consideración del jurado en ninguna otra forma en el juicio.

Una parte que en el examen de repreguntas interroga

a un testigo respecto a su interés, parcialidad, prejuicio o predisposición, o sobre cosas que tienden a demostrar dicho interés o predisposición, no queda obligado por su negativa sino que puede contradecirlo por medio de otras pruebas por no ser el asunto colateral por su naturaleza. *People* v. *Wong Chuey,* 117 Cal. 624, 49 Pac. 833; 40 Cyc. 2674.

Por tener relación con el punto relativo a la credibilidad puede alegarse y considerarse si las relaciones de un testigo con una persona, o sus relaciones hacia esa persona son de amistad o no lo son. *People* v. *Anderson,* 105 Cal. 32, 38 Pac. 513; 40 Cyc. 2656.

Pero no puede ser examinado un testigo so pretexto de que va a impugnarse su veracidad, o a prepararse para ello, sobre cuestiones que no afectan a su crédito y que la parte que repregunta no tiene derecho a ponerlas de manifiesto para otros fines. 40 Cyc. 2566, y casos citados en la página 2568.

Y no es correcto poner de manifiesto cosas que aun siendo ciertas no tendrían una verdadera tendencia a hacer desmerecer la credibilidad de un testigo. *Ducharme* v. *Holyoke Street Ry. Co.,* 203 Mass. 384, 89 N. E. 561; 40 Cyc. 2572.

Se nos hace imposible comprender la tenaz insistencia por parte del Fiscal en hacer que esta carta fuera a manos del jurado como no hubiera sido para probar el rumor público y otras cosas que en ella tienden a demostrar la relación del acusado con el delito. Se permitió que este rumor público pasara a la consideración del jurado prácticamente sin ninguna restricción. Es verdad que la corte al admitirlo limitó el efecto de dicho rumor al objeto de contradecir al Dr. del Valle. Técnicamente la carta sólo debió haber sido admitida mientras el mismo Dr. del Valle declaraba y cuando él podía tener la oportunidad de explicarla, de conformidad con los bien conocidos principios de evidencia contenidos en los artículos 156 y 159 de la Ley de Evidencia. La restricción que hizo la corte de esta carta fué al terminar una discu-

sión acalorada respecto a si era o no admisible dicha carta. La corte en sus instrucciones no trató de restringir el efecto de la carta o el uso que podía hacerse de ella. La carta, en realidad de verdad, fué tomada en consideración por el jurado en todos sus particulares. Aun cuando la carta hubiera sido admisible en evidencia todavía diríamos que hubo error en este caso, pues no se hizo la debida restricción respecto a la misma.

El principio legal, con ciertas excepciones, rechaza la prueba de referencia aunque sea lógica. Artículo 19 de la Ley de Evidencia, Leyes de 1905, página 72; 16 Cyc. 1192.

El rumor público es una de las más insidiosas formas de prueba de referencia. Chamberlayne, tomo 4, párrafo 2572; 16 Cyc. 1213; 34 Cyc. 1821.

En este caso estamos obligados a resolver que el acusado fué juzgado en parte por un rumor público. En este sentido no fué confrontado con los testigos en su contra, como lo exige al artículo 11 del Código de Enjuiciamiento Criminal, sino que fué confrontado con un rumor público que se trajo a la consideración del jurado so pretexto de contradecir a un testigo, o sea la misma conducta que hemos reprochado en el caso de *El Pueblo* v. *Rojas,* 16 D. P. R. 251.

También en el caso de *El Pueblo* v. *Ortiz,* 22 D. P. R. 680, al concurrir los jueces disidentes con la opinión de la mayoría sobre este punto, llamaron la atención hacia el hecho de haberse tratado de presentar prueba que por otros conceptos era admisible so pretexto de atacar el carácter del acusado. No es posible hacer repreguntas sobre el rumor público, o siquiera analizarlo.

De acuerdo con las leyes de Puerto Rico el acusado tiene derecho a un juicio por jurado en casos de delitos graves (*felonies*). Por varios siglos ciertas clases de pruebas, secundarias o de otro modo incompetentes, como la de referencia, las Leyes de Evidencia han impedido que sean someti-

das a los jurados ingleses y americanos. La Ley de Eviden-
cia ha sido introducida deliberadamente en Puerto Rico y
las cortes están obligadas por virtud de la misma. No será
bastante con permitir que un fragmento de prueba lógica
sea sometida al jurado y tratar entonces de decir que la pre-
sentación de esta prueba que debió haber sido excluída no
perjudicaba, puesto que la mayor preponderancia de la
prueba estaba en contra del acusado de todos modos. Si
la gran preponderencia de la prueba estaba en contra del
acusado, entonces había menos motivo por parte del Fiscal
para insistir tenazmente en la admisión de la carta del Dr.
del Valle Sárraga. Si el Fiscal puede presentar al jurado
la prueba que tiene un efecto probatorio y después de su ad-
misión se alega que no perjudica, nos encontramos enton-
ces con un caso en que un hombre ha sido juzgado por un
delito grave (*felony*), no por un jurado, sino prácticamente
por la corte. Si esta carta no era importante para conven-
cer al jurado de la culpabilidad de Clemente Ramírez de Are-
llano, entonces ¿por qué insistir el Gobierno en su presen-
tación a pesar de las protestas y bien razonadas objeciones
del apelante? El Fiscal de la Corte de Distrito de San Juan
probablemente sabía mejor que ninguna otra persona si era
o no necesaria esta carta para convencer al jurado en este
caso. La conservación del juicio por jurados en casos de de-
litos graves (*felonies*) consideramos que es esencial a la li-
bertad en Puerto Rico, y no deben favorecerse los medios
indirectos de presentar rumores públicos a la consideración
del jurado.

La admisión de esta carta era perjudicial porque eviden-
temente fué presentada como prueba de tal modo que llevó
un rumor público a la consideración del jurado. Fué per-
judicial, porque permitía al jurado dudar de la declaración
del Dr. del Valle cuando éste hacía manifestaciones que es
de presumirse eran en favor del acusado. Si fué verdadera
la declaración del Dr. del Valle, y existe, como hemos visto,

una presunción en su favor, el acusado tenía derecho al beneficio de esta declaración exenta de impugnación.

Nos hemos referido al hecho de que la corte nada dijo en sus instrucciones que limitara el efecto de esta carta. En realidad la corte dió énfasis en sus instrucciones a dicha carta. Refiriéndose a este punto la corte dijo lo siguiente:

"Se presentó también como perito al Sr. del Valle Sárraga. A este testigo, al ser interrogado por el Fiscal en su período de *cross-examination*, se le presentó una carta suscrita por él, en su capacidad de amigo del acusado Sr. Ramírez, y como jefe también de una escuela que él tiene en donde varios alumnos cursan estudios de farmacia y deben recibir aprobación ante la Junta de Farmacia.

"Esa carta, como recordarán los señores del jurado, levantó un vivo incidente ante esta corte. La corte tuvo dudas al principio respecto a la admisión de ese documento y detuvo su resolución, pero más tarde el Fiscal examinó al mismo acusado sobre los distintos particulares de la carta, haciéndolo en forma tal, que la corte no tuvo duda ninguna respecto a la procedencia de ese documento, y por esa razón le admitió.

"No quiero hacer ninguna consideración ante los señores del jurado respecto a la procedencia de la admisión de ese documento, porque el debate más importante surgió ante la presencia del jurado. El defensor estuvo conforme en tratar esa cuestión ante el jurado y por esa razón la corte no mandó retiraros.

"Ese documento ha sido ampliamente examinado y discutido en los brillantes informes que se han pronunciado ante vosotros por las distinguidas representaciones de El Pueblo y el acusado.

"En ese documento, que pasará a manos del jurado, se habla por el Sr. Sárraga de un rumor público, consistente en la forma anormal en que se conducían ciertos procedimientos en la Junta Examinadora de Farmacia, y que le llamaba la atención a su amigo, la persona a quien la carta iba dirigida, para que él interpusiera toda su influencia a fin de que este estado de cosas cesara y fuera corregido completamente.

"La corte no tiene duda de que este documento ha sido bien admitido, y por eso lo admitió; de otra manera hubiera sido rechazado.

"Tanto ese documento como los demás que se han presentado, pasarán a la consideración de los señores del jurado, para su examen, y para que vosotros le déis el valor probatorio que creáis que merecen.

"Después de esta declaración del acusado, vuelve a repetirse la

prueba de peritos de la defensa, y al efecto comparecieron dos peritos más; el mismo Dr. del Valle Sárraga, que vino a declarar sobre el fondo de la carta y explica los motivos que tuvo para redactar esa carta, y manifiesta que al escribir esa carta, se fundó en la información que le habían hecho sus alumnos.''

Si examinamos las anteriores instrucciones se verá que la corte no solamente dejó de limitar cuidadosamente el uso que había de hacerse de la carta del Dr. del Valle, sino que volvió a llamar la atención hacia el rumor público en ella contenido. En vista de las circunstancias de este caso, como ya hemos dicho, creemos que estos comentarios hubieran constituído un error perjudicial aun cuando el Dr. del Valle hubiera negado su amistad con Clemente Ramírez de Arellano. Los autos muestran que al ser presentada esta carta como prueba, pero antes de ser admitida, el Fiscal empezó a leer parte de su contenido en voz alta. El jurado estaba presente y por las palabras pronunciadas podía venirse en conocimiento de la naturaleza de la carta. Es impropio para el Fiscal hacer esto y la defensa se opuso, pero no tomó excepción. Si la carta hubiera sido excluída sería una importante cuestión si el leer esta carta en voz alta, aunque de buena fe, no fué un error perjudicial aun cuando no se tomara excepción.

El tercer señalamiento de error se refiere a las instrucciones. El apelante admite el hecho de no haberse tomado excepción a ninguna parte de las instrucciones de la corte. De acuerdo con la jurisprudencia constante de este tribunal, por lo general no tomaremos en consideración aquellos errores relativos a las instrucciones a los cuales no se hubiere tomado excepción, a no ser que estemos convencidos de que el error es fundamental. Los abogados de un acusado son los mejores jueces para juzgar el hecho de si la corte les concede todo aquello a que tienen derecho y en este caso al terminar la corte sus instrucciones los abogados del acusado solicitaron que se dieran al jurado instrucciones adiciona-

les, pero no hicieron ningún comentario acerca de las instrucciones ya dadas. •Se sostiene casi universalmente que con este proceder se renuncia a cualquier error que pudiera existir. No constando que se hubiera tomado alguna excepción la corte de apelación tiene que presumir que los abogados quedaron bastante satisfechos con las instrucciones. Si fuera de otro modo el Estado quedaría sujeto a los gastos que ocasionan los frecuentes nuevos juicios. Comentaremos, sin embargo, una o dos de las instrucciones.

El punto relativo a la duda razonable no fué muy bien explicado al jurado en esta forma:

"La duda razonable es un concepto difícil de expresar. Duda razonable no es la duda caprichosa, no es la antojadiza, sino la duda fundada en la lógica misma de los hechos controvertidos; es la duda que nace de la falta de algún elemento de prueba, de alguna cosa que surja durante el juicio, fundada en los mismos hechos discutidos.

"Si vosotros estimáis que esa duda razonable existe, es vuestro deber darle al acusado el beneficio de ella y absolverlo."

En el caso de *El Pueblo* v. *Nevárez,* 10 D. P. R. 94, citando del caso de *Hopt* v. *Utah,* 120 U. S. 430, indicamos una forma de instrucciones sobre duda razonable. A veces las cortes han considerado válidas las instrucciones en las cuales simplemente se dice al jurado que no deben declarar culpable al acusado si tienen alguna duda razonable. Por otra parte, a veces es conveniente que la corte defina con alguna amplitud la naturaleza de la duda razonable.

La corte dejó de instruir al jurado respecto a la presunción de inocencia, y el apelante nos cita el caso de *People* v. *Macard,* 73 Mich. 25, para demostrar que las cortes han revocado sentencias sin que se hubiera tomado excepción a dicha omisión. El apelante admite, sin embargo, que no es ésa la práctica en Texas, ni lo es tampoco en otros Estados; y en el caso de *People* v. *Wah Hing,* 15 Cal. App. 195, 114 Pac. 416, se dijo que el dejar de dar instrucciones acerca de la presunción de inocencia no constituye error si la corte

dice al jurado que deberá estar satisfecho de la culpabilidad del acusado fuera de duda razonable. *Coffin* v. *United States,* 156 U. S. 446, opinión del Juez Sr. White que da luz sobre este punto. La corte aun cuando no se le pida, debe siempre en bien de la justicia dar instrucciones sobre la presunción de inocencia. El no hacer esto al pedírsele fué motivo de revocación en el caso de *Coffin* v. *United States, supra.*

Los demás errores con respecto a las instrucciones caen dentro del principio relativo a los errores que han sido renunciados por no haberse tomado excepción. La corte inferior estuvo algo equivocada en cuanto a su deber al comentar sobre la prueba. Dice la corte que la ley le impone el deber de tener que expresar su opinión acerca de todas las cuestiones de derecho suscitadas durante el juicio, y tiene, según parece, la idea de que ha de hacer un resumen de todos los hechos. No es así. La ley de 9 de marzo de 1911 para enmendar el párrafo 8 del artículo 233 del Código de Enjuiciamiento Criminal prescribe al juez la norma o pauta a que ha de ajustarse en sus instrucciones al jurado y no debe separarse de ella. De todos modos cuando la corte ha considerado minuciosamente los hechos debe evitar tener que expresar alguna opinión en contra del acusado y concluir por decir al jurado que él es el sólo y exclusivo árbitro de las cuestiones de hecho.

No examinaremos ninguna de las demás instrucciones, pero debemos agregar que un razonable número de las censuras hechas por el apelante podrían haberle servido en apelación de haberse formulado objeciones y tomado excepciones en la corte inferior.

Con respecto al cuarto señalamiento de error creemos que se equivoca el apelante en cuanto a la naturaleza del cheque. Un cheque según el artículo 534 del Código de Comercio es un documento que permite al librador retirar, en su provecho o en el de un tercero, todos o parte de los fondos que tiene disponibles en poder del librado. El hecho de ser

entregado a un tercero para un fin ilegal no podía afectar a la cuestión de si en realidad de verdad recibió un acusado una cosa de valor, especialmente después de haberse cobrado dicho cheque. No era más ilegal que lo que hubiera sido la misma entrega en metálico. Por tanto, sostenemos que no hubo incongruencia en la presentación como prueba de haberse entregado estos cheques. El acusado realmente recibió el dinero que representaban y los aceptó previamente como pago.

Creemos que era meramente superfluo alegar en la acusación que el acusado era un miembro de la junta "nombrada legalmente." La acusación siempre hubiera sido válida si se hubiera demostrado que el funcionario era *de facto*.

No creemos que se cometió error al permitirse al Fiscal que tratara de probar por medio del testigo Bernal que éste no reunía las condiciones legales para tomar el examen. La prueba del lugar de sus estudios y de donde había estudiado, a lo sumo sería un error que no perjudicaba.

Con respecto a la declaración del testigo Enrique Arnaldo para probar que él había copiado las mismas preguntas y contestaciones que fueron copiadas por el acusado, opinamos que era prueba pertinente independientemente del hecho de que sus manifestaciones tendían a corroborar a Bernal, y esto lo creemos, porque la prueba tendió a mostrar un plan por parte del acusado y de otras personas para admitir personas incompetentes a los exámenes y darles sus títulos. *People* v. *Bidleman,* 104 Cal. 608, 38 Pac. 502. *People* v. *Sternberg,* 111 Cal. 3, 43 Cal. 198, 12 Cyc. 411, 8 R. C. L. 202 *et seq.* Debemos, sin embargo, prevenir al Gobierno de que un rumor público no podía ser empleado con este objeto.

Se cometió error al preguntar al testigo Calderón Aponte si no se había iniciado una causa contra él. Hasta tanto una persona no haya sido declarada culpable existe la presunción de inocencia a su favor, y el hecho relativo a un proceso criminal no tiende a desacreditarlo. Es innecesario tratar de

esta cuestión puesto que el caso va a ser devuelto a la corte inferior para la celebración de un nuevo juicio y puede evitarse el error.

Como este caso va a ser devuelto para la celebración de un nuevo juicio, debemos advertir al Gobierno que no solamente no debe ser presentado como prueba el rumor público, sino que no debe tratarse de presentar ante el jurado ninguna de las consideraciones hechas por este tribunal. Hemos temido que en algunos casos los comentarios hechos por esta corte prácticamente han sido utilizados como prueba en casos que han sido devueltos para la celebración de un nuevo juicio.

Después de considerar los autos en conjunto no estamos satisfechos de que el apelante tuvo el juicio imparcial que exige nuestro sistema de leyes, debiendo revocarse la sentencia y devolverse el caso para que se celebre un nuevo juicio.

> *Revocada la sentencia apelada y ordenada la celebración de un nuevo juicio.*

Jueces concurrentes: Sres. Presidente Hernández y Asociados del Toro, Aldrey y Hutchison.