El Pueblo de Puerto Rico, demandante y apelado, *v.* Carlos Juan Fernández, acusado y apelante.

No. 3437.—*Sometido:* Marzo 20, 1929. *Resuelto:* Nov. 7, 1929.

*R. Muñoz Ramos*, abogado del apelante; *José E. Figueras*, abogado de *El Pueblo*, apelado.

EL JUEZ ASOCIADO SEÑOR HUTCHISON, emitió la opinión del tribunal.

Carlos Juan Fernández fué convicto de un delito de homicidio voluntario, y se queja de supuestas irregularidades en el método seguido por el fiscal de distrito mientras impugnaba la declaración de un testigo de El Pueblo, Manuel Pérez Elías.

Después de haber sostenido una riña con Enrique Pimentel, Pérez Elías se fué a su casa y se estaba cambiando de ropa cuando Enrique lo llamó desde la calle. Una breve conversación que tuvieron fué interrumpida por Paco Pimentel, quien los aconsejó en tonos amistosos. Pocos minutos después, Enrique Pimentel fué muerto de bala por Carlos Juan Fernández.

Dentro de la hora siguiente, Pérez Elías declaró ante un juez municipal: que después de su conversación con Enrique Pimentel, se quedó en el balcón; que pocos minutos después oyó un disparo, pero no vió quién lo hizo; que entonces miró y vió a Enrique Pimentel caer al suelo junto a la cuneta, frente a la casa del lado, y que no vió que Pimentel sacara arma alguna.

Durante el juicio, Pérez Elías declaró que Carlos Juan Fernández—siguiendo el ejemplo de Paco Pimentel—recomendó a Enrique Pimentel que olvidara el asunto, y le preguntó que por qué deseaba pelear con el testigo, siendo amigo y compañero suyo; que entonces Enrique aplicó ciertos epí-

tetos a Fernández y le dió un puñetazo; que Fernández resbaló y se cayó; que Enrique hizo un ademán como para sacar un arma, y Fernández disparó.

Las dos declaraciones no pueden reconciliarse.

Antes de mostrársele la declaración jurada a Pérez Elías durante el juicio, él declaró que la noche de referencia fué citado para que compareciera ante el juez municipal, y que fué conducido primero al cuartel de la policía y después a la corte, donde prestó declaración.

Se opuso la defensa por el fundamento de que si el fiscal deseaba impugnar la veracidad del testigo debía primeramente anunciar esa intención. El fiscal replicó que si el señor letrado lograba convencerlo de que el procedimiento era irregular, él se allanaría. El abogado del acusado entonces dijo que no deseaba argumentar, y sí proteger los derechos del acusado. El juez indicó al fiscal que prosiguiera, y el acusado anotó excepción.

El testigo entonces continuó así: que prestó declaración ante el juez municipal dentro de una hora de haber ocurrido la muerte; que una vez que hubo prestado declaración, el juez se la dió para que la firmara; que el testigo cree que le fué leída; y que la suscribió.

Cuando se le preguntó al testigo si su declaración en la silla testifical era al mismo efecto que la prestada ante el juez municipal, la defensa objetó por el fundamento de que al testigo debía decírsele lo que había manifestado ante el juez municipal, a fin de ver si podía o no recordar lo que él decía haber consignado, y que debía informársele del día, hora y sitio en que hizo esas manifestaciones. El fiscal contestó que el testigo había mencionado al juez municipal ante quien las hizo. El acusado entonces insistió en que aparecía de la declaración del testigo que sus dos versiones eran idénticas. El juez sentenciador indicó que el fiscal no había terminado el interrogatorio del testigo, y declaró sin lugar la objeción, a lo que el acusado tomó excepción.

Entonces el testigo dijo que estaba relatando lo ocurrido,

y lo que le había manifestado al juez municipal cuando se escribió a máquina la declaración; que él no sabía si el juez había omitido algo.

El testigo identificó entonces su firma y se le pidió que leyera la declaración prestada por él ante el juez municipal, lo cual hizo. Al preguntársele nuevamente si su declaración en la silla testifical era la misma que la prestada ante el juez municipal, contestó que la declaración a máquina no concordaba con el testimonio dado durante el juicio, porque su declaración anterior no le fué leída antes de firmarla. Preguntado si había leído la declaración antes de firmarla, contestó que sí.

El testigo luego dijo, en contestación a otras preguntas, que lo que había relatado durante el juicio no aparecía en su declaración escrita, que ante el juez municipal había hecho mención del puñetazo recibido por Carlos Juan, y que eso no aparecía en su declaración escrita.

Nuevamente se opuso la defensa, sin exponer los motivos de su objeción, y el fiscal solicitó que se suspendiera el interrogatorio del testigo con el fin de traer al juez municipal a declarar. La corte denegó esa solicitud. El fiscal entonces preguntó al testigo si había hecho las manifestaciones contenidas en el documento escrito a máquina y firmado ante el juez municipal, y empezó a leérselo. La defensa se opuso, por el motivo de que no podía leerse el documento en presencia del jurado antes de ser admitido en evidencia. El fiscal respondió que era su propósito demostrar que el testigo había hecho manifestaciones que contradecían las hechas durante el juicio. El abogado insistió en que la Corte Suprema había resuelto recientemente que no podía introducirse evidencia en esa forma. El fiscal indicó que lo que deseaba preguntar al testigo era si la declaración contenida en el documento era la misma que había prestado en la silla testifical, con el fin de que el testigo entonces explicara por qué los hechos relatados en la silla testifical no constaban por escrito. Se preguntó entonces al testigo si la declaración que él reco-

nocía haber firmado ante el juez municipal fué suscrita como la declaración prestada por el testigo el 20 de mayo de 1926. La respuesta fué en la afirmativa. Se le interrogó al testigo, sin ulterior objeción de parte de la defensa, si había hecho o no las manifestaciones contenidas en el documento escrito a máquina que le fué leído por el fiscal. La lectura fué seguida de una pregunta respecto a si lo leído por el fiscal era la declaración contenida en el documento que acababa de leerse. Volvió el testigo a contestar afirmativamente. No se anotó excepción alguna, y el fiscal anunció que nada más tenía que preguntar. El letrado de la defensa procedió a repreguntar.

El incidente que acabamos de bosquejar no es uno que pueda recomendarse como un ejemplo a seguir en la práctica, pero no revela un error que justifique la revocación.

La cuestión relativa a si la declaración prestada por Pérez Elías durante el juicio era la misma que prestó ante el juez municipal, era innecesaria, pero no fuera de lo natural, o inexcusable. El propósito obvio del fiscal era obtener del testigo bien una admisión o una negativa respecto a que al declarar ante el juez municipal había dicho algo contrario a su declaración durante el juicio. Según se dice en 2 Wigmore (2ª ed.) 471, sección 1023: "No hay objeción alguna, ora de principio, o de práctica, a semejante tentativa de probar con el mismo testigo que él ha hecho manifestaciones contradictorias."

El primer fundamento de la objeción (de que al testigo no se le dijo lo que se suponía haber manifestado ante el juez municipal) fué acompañado del segundo, en el sentido de que al testigo no se le había informado de la hora, sitio y personas presentes en la ocasión anterior. Lo dicho por el fiscal de distrito demostró en seguida que el segundo fundamento era insostenible, y la defensa, en vez de hacer hincapié en el primero, se conformó con indicar que, de acuerdo con el testigo, las dos declaraciones eran idénticas. Así, pues, la atención del juez de distrito pudo haberse desviado del primer fundamento, aunque la observación de que el fiscal no

había terminado su interrogatorio indica que la corte creyó que la cuestión era meramente preliminar, y, por tanto, propia. En todo caso, al testigo se le mostró la declaración jurada antes de que se repitiera la pregunta, aunque sí después que había sido contestada y antes de que se le dijera que explicase la discrepancia entre las dos declaraciones, o de que se le interrogara específicamente sobre la prestada ante el juez municipal.

La contestación, en la forma en que fué dada, demuestra que el testigo ya había divisado la sombra que a veces proyectan los acontecimientos que se aproximan. No hubo una sorpresa indebida ni para el testigo, ni para el acusado. El fin del artículo 245 del Código de Enjuiciamiento Criminal es el de evitar esa sorpresa. No hubo infracción de la regla invocada por la defensa, bien tal como se expone en ese artículo, o según se parafrasea en el caso de *El Pueblo* v. *Díaz,* 22 D.P.R. 191, citado en el alegato del apelante.

No se trató de introducir prueba de referencia bajo el pretexto de impugnar la credibilidad de un testigo, y el caso de *El Pueblo* v. *Colón,* 25 D.P.R. 629 (el próximo caso en que se funda el apelante) no es aplicable. No se le imputó al fiscal semejante propósito durante el juicio, y la única objeción interpuesta no se basó en tal motivo. El caso de *El Pueblo* v. *Ramírez de Arellano,* 25 D.P.R. 263,—el tercero de los citados por el apelante—no sostiene su contención de que es erróneo permitir que la declaración jurada de un testigo le sea leída en voz alta en presencia del jurado con el fin de preguntarle si ha prestado esa declaración. De todos modos, la cuestión no puede ser levantada por primera vez en apelación.

Las otras cuestiones relativas al método de impugnación empleado mientras los testigos Miguel Castaño y Carlos Benítez ocupaban la silla testifical carecen también de mérito.

Otra contención es que la corte de distrito erró al negarse a eliminar la declaración de Borinquen Marrero, el juez municipal, en torno a una confesión oral, no obstante la

existencia de una confesión escrita al mismo efecto y firmada por el acusado.

La confesión oral fué hecha por el acusado en su propia casa muy poco después del suceso. Durante la noche y la mañana del siguiente día, veinte y tres testigos fueron examinados por el juez municipal. No aparece cuántos de estos testigos habían declarado antes de que se hiciera constar por escrito la confesión del acusado. El juez municipal tomó la declaración oral en taquigrafía, pero fuera de esto, nada hay que indique que ésa fué la confesión que posteriormente fué escrita a máquina por el juez y suscrita por el acusado. Sí aparece que el juez le hizo las advertencias legales por dos ocasiones: primero, antes de hacer sus manifestaciones orales, y después, en la corte municipal, donde hizo la confesión escrita. El juez municipal no dijo en tales o cuales palabras, ni se le pidió que dijese, que el acusado volvió a declarar ante la corte municipal, y que esa declaración fué también tomada en taquigrafía antes de escribirla en la máquina, pero ésa es una inferencia lógica que se desprende de su testimonio en conjunto. La regla que excluye evidencia oral sobre el contenido de una confesión escrita no excluye testimonio concerniente a una confesión oral hecha en hora y sitio distintos. El juez municipal no había declarado en cuanto al contenido de la declaración escrita prestada y suscrita por el acusado algunas horas después de la comisión del delito, sino que sencillamente repitió en la silla testifical la primera declaración prestada por el acusado en su propia casa pocos minutos después del suceso, y sin que hubiese mucho tiempo para reflexionar. La corte de distrito no erró al negarse a eliminar esa declaración.

El apelante también se queja de ciertas resoluciones negándose a admitir evidencia sobre actos específicos tendientes a demostrar el carácter violento y peligroso de Enrique Pimentel. Tal como se desarrolla en el alegato, la cuestión no demanda seria consideración. Ese testimonio fué propiamente rechazado en algunas ocasiones, y en aque-

llas en que fué excluído impropiamente, fué admitido después. Cualquier error de esta naturaleza que pueda haberse cometido era inofensivo.

La discusión de otras cuestiones suscitadas en el alegato del apelante no tendría fin práctico alguno.

*Debe confirmarse la sentencia apelada.*

El Juez Asociado Señor Texidor no intervino.